CLARKSON *et al.* v. HATTON, *Appellant.*

Division One, February 23, 1898.

143  47
79a  640

1. **Adopted Children.** An adopted child becomes in a legal sense the child of the adopting parents, and is, under our statute, entitled to inherit their property; and at the same time it remains the child of its natural parents, and is not deprived of its right to inherit from them unless it is expressly excluded by statute.

2. **Technical Words:** MEANING IN STATUTES. The rule of construction is that technical words or phrases which have acquired a peculiar and appropriate meaning in legal phraseology, shall be construed according to such meaning, unless it appears that they were not used in their technical sense. When words and phrases have received a fixed legal interpretation by repeated decisions, such interpretation will be adhered to in construing their meaning when used in deeds or other legal instruments.

3. ——: ——: ADOPTED CHILD: ESTATES TAIL. The phrase "bodily heirs" does not include adopted children, nor do the words "children" and "heirs," as used in the statute of 1855 abolishing estates tail, mean adopted children.

4. Adopted Child: DEED TO ONE AND HIS BODILY HEIRS. A conveyance was made to Clarkson and his bodily heirs. At the time he had no children or other descendants, and none were born to him after the deed was made, but while in possession of the property he regularly adopted the defendant as his child, who survived him. *Held*, that the defendant could inherit from him all lands deeded to "Clarkson and his heirs," but not such lands as were deeded to him and "his bodily heirs," and hence the land in question descended at the death of Clarkson according to the statute of descents and distributions, and in this case was inherited by his brothers and sisters.

*Appeal from Mississippi Circuit Court.*—HON. JAMES D. FOX, Judge.

REVERSED AND REMANDED (*with directions*).

*Harry J. Cantwell, Wm. N. Randolph* and *Jas. A. Boone* for appellant.

(1) The deed from Jabez Clarkson under section 5, chapter 32, Revised Statutes 1855, page 355, created a statutory estate—estate tail being by said statute abolished. R. S. 1855, p. 355, sec. 5, chap. 32; *Clarkson v. Clarkson*, 125 Mo. 381. (2) Under the statutory estate so created John Clarkson took a life estate; and at his death the remainder was vested in Roy Conyers as the only child of said John Clarkson. *Moran v. Stewart*, 122 Mo. 295; *Fosburgh v. Rogers*, 114 Mo. 122. (3) If for any reason Roy Conyers can not take the remainder of this statutory estate under the word "children," he is entitled to the remainder as the heir of John Clarkson under the word "heirs," as used in said act of 1855. R. S. 1855, p. 355, sec. 5, chap. 32, last clause; *Moran v. Stewart*, 122 Mo. 295; *Fosburgh v. Rodgers*, 114 Mo. 132; *Clarkson v. Clarkson*, 125 Mo. 381. (4) No man has an heir until he dies; and un-

der the laws of Missouri, Roy Conyers is the heir of John Clarkson and became his heir upon the death of said Clarkson in 1890. In order to determine who are a man's heirs resort must be had to the statute of descents at time of his death. *Moran v. Stewart*, 121 Mo. 295; *Fosburgh v. Rodgers*, 114 Mo. 132. (5) The plaintiffs are not in any event entitled to damages for rents and profits prior to the commencement of this suit. *Robidoux v. Casseleggi*, 81 Mo. 459.

*Russell & Deal* for respondents.

(1) This title was passed upon by Division One of this court, and its opinion, we think, ought to have settled all controversy over the lands in dispute. *Clarkson v. Clarkson*, 125 Mo. 287. (2) We have contended in this case that the so-called deeds of adoption were irregular and void, as the facts showed the child had a father living in the same county who had never consented to such adoption, and for the reason that an attempt was first made to adopt the child by Mary Thurman and by her released in favor of John Clarkson and wife and a so-called deed of adoption executed by them, all without the consent of its father. *Luppie v. Winans*, 37 N. J. Eq. 245. (3) We must construe the section of the statutes referred to in the light and with reference to laws in force when it was enacted. The intention of the lawmaker is always regarded as one of the controlling elements in construing an act. When this section was enacted there was no statute in this State authorizing the adoption of children. So it is not possible that this clause was intended to include any kind of heirs not then known to the laws of the State. The law authorizing the adoption of children was enacted in 1857. Acts 1857, p. 59. (4) Moreover, the law will not permit a man to do indirectly

what he can not do directly.   John Clarkson only had a life estate in this property; he could not enlarge it by deed nor will.   He could not by contract sell the land beyond his own life, and it would be a strange rule to hold that by contract he could create an heir who could take a greater interest than he had himself, especially under the terms of a law passed before the law authorizing his contract.   (5)  An adopted child is not in fact an heir at law, but an heir by contract.   An adopted child can by reason of the contract of the adopting parent inherit from him, but an adopted child is not an heir so far as to effect the rights of others. *Reinders v. Koppelman*, 94 Mo. 344; *Keegan v. Geraghty*, 101 Ill. 26; Schouler, Dom. Rel., sec. 232.   The word children, as commonly used, does not include an adopted child.   *Schafer v. Eneu*, 54 Pa. St. 304.

*Harry J. Cantwell, Wm. N. Randolph* and *Jas. A. Boone* for appellant in reply.

(1) The consent of the parents to the act of adoption is not made necessary by the Missouri statute and has not been held necessary to confer rights upon the adopted child.  *Luppie v. Winans*, 37 N. J. Eq. 245. As the trial court found the deed of adoption regular and valid (instruction number 6) and as respondents took no exceptions and perfected no appeal, they can not now be heard against its validity.  *Clarkson v. Clarkson*, 125 Mo. 381.  (2) The statute of adoptions was in force at the time the deed in question was made. (3) One with such an estate as John Clarkson had might marry, which is a contract, and might under that contract beget or not beget children (presuming him virile); would he not thus enlarge the estate, or rather, would he not, by his own act, determine the descent?   (4) The case of *Reinders v. Koppleman*, 94

Mo. 344, cited by respondent, was not and is not the construction of a legal estate, nor of the statute of descents, nor of the statute in question here. It is simply an instance of the application of the ordinary rules of interpretation to discover the identity of the person meant as the recipient of the testator's bounty. (5) The descent of property is a creature of civil policy, for the permanent right of property is no natural, but merely a civil right. *Sewall v. Roberts*, 115 Mass. 262; Blackstone's Com., book 2, p. 12; 15 Conn. 129; 21 Mich. 73.

ROBINSON, J.—This is an action of ejectment to recover possession of certain land in Mississippi county. The petition was in the usual form. The defense set up in the answer was that defendant is in possession as curator of the estate of Roy Conyers, a minor, who is averred to be the owner in fee of the land. A reply was filed denying the new matter contained in the answer. The cause was tried before the court without a jury and resulted in a judgment for plaintiff from which defendant appeals. The action was instituted on February 25, 1895, and tried at the ensuing April term of the Mississippi county circuit court. It was admitted that Jabez Clarkson was the common source of title. On November 9, 1858, Jabez Clarkson conveyed the land in question by warranty deed to his son, John Clarkson, and his "bodily heirs." John Clarkson was in possession of the land at the time said deed was executed, and continued to reside thereon until 1890, at which time he died, leaving his wife, Sarah Clarkson, surviving, who died in 1894, prior to the commencement of this suit. John Clarkson had no children or their descendants living at the date of said deed, and none were born to him after that time. The plaintiffs are the only living brothers and sisters of John Clarkson.

Not having an heir born of his body, John Clarkson and his wife Sarah, on the eleventh day of July, 1887, by their deed duly executed, acknowledged and recorded, adopted Roy Conyers, who survived them as their child and heir.

In the recent case of *Clarkson v. Clarkson*, 125 Mo. 381, this court held that the deed from Jabez Clarkson to John Clarkson created an estate tail, which our statute, *eo instanti*, converted into a life estate in John Clarkson with remainder in fee to his children. BLACK, J., who wrote the opinion, after stating the facts, says: "On this state of facts the plaintiffs insist the title passed to them. The question must be determined by section 5, chapter 32 of the Revised Statutes of 1855, the statute in force when the deed was executed. It provides that any conveyance or devise which would have created an estate tail under the statute of the thirteenth Edward First shall vest an estate for life only in such grantee or devisee, who shall possess and have the same power over, and right in, such premises, and no other, as tenants for life thereof would have by law; and upon the death of such grantee or devisee, the said land and tenements shall go and be vested in the children of such grantee or devisee, equally to be divided between them as tenements in common, in fee; and if any child be dead, the part which would have come to him or her shall go to his or her issue, and if there be no issue, then to his or her heirs. This statute disposed of the entire estate conveyed by the deed. It vested in John Clarkson a life estate and no more. As he had no children, or their descendants living, either at the date of the deed or at his death, the remainder vested, according to the last clause of the statute just quoted, in his brother and sisters and the heirs of those who were dead, he having no father or mother living at his death."

The statute then and now under consideration reads: "That from and after the passage of this act, where any conveyance or devise shall be made whereby the grantee or devisee shall become seized, in law or equity, of such estate, in any lands or tenements as, under the statute of the thirteenth Edward the First (called the Statute of Entails) would have been held an estate in fee tail, every such conveyance or devise shall vest an estate for life only in such grantee or devisee, who shall possess and have the same power over, and right in, such premises, and no other, as a tenant for life thereof would have by law; and upon the death of such grantee or devisee, the said lands and tenements shall go, and be vested in the children of such grantee or devisee, equally to be divided between them as tenants in common, in fee; and if there be only one child, then to that one, in fee; and if any child be dead, the part which would have come to him or her, shall go to his or her issue; and if there be no issue, then to his or her heirs." 1 R. S. 1855, p. 355, sec. 5, chap. 32.

The defendant contends that, as to the land in question, under the statutory estate so created, the remainder after the death of John Clarkson, vested in Roy Conyers, the adopted child of John Clarkson under the word "children" used in the statute above quoted, or the words "heirs" in the last clause of said section. The plaintiffs, however, claim, and the circuit court so held, following *Clarkson v. Clarkson, supra*, that as John Clarkson had no children living at the time of his death, the remainder vested in his brothers and sisters and their descendants. It is objected further that this deed of adoption is not legal and valid because it does not appear that the father of the adopted child consented to such adoption. The statute under which the deed of adoption was executed

provides: "If any person in this State shall desire to adopt any child or children, as his or her heir and devisee, it shall be lawful for such person to do the same by deed, which deed shall be executed, acknowledged and recorded in the county of the residence of the person executing the same, as in the case of conveyance of real estate." Acts 1857, p. 59. No provision is made by the statute, in a case like the present, for the consent of the natural parents of the party sought to be adopted. It has been held by this court that neither the natural parents nor guardian of the child or children proposed to be adopted, are required to join in the execution of the deed of adoption, or consent thereto in order to entitle the child to inherit from the adopted parents. *Reinders v. Koppelmann*, 68 Mo. 482; *In re Clements*, 78 Mo. 352. The case of *Luppie v. Winans*, 37 N. J. Eq. 245, relied upon by plaintiffs in support of their position, has no application here. The statute of New Jersey expressly requires the consent of the parents to the act of adoption. Under the statutes of that State the act of adoption divests the natural parents of all control over the child so adopted. We are of opinion, therefore, that the adoption of Roy Conyers in this case was valid.

The next inquiry for our determination is, what are the rights of the adopted child? Can the adopted child in this case take property expressly limited to the "heirs of the body" of the parents by adoption? It is argued by counsel for plaintiffs that the decision by this court in *Clarkson v. Clarkson, supra,* is decisive of that question. In the concluding paragraph of that opinion the court says: "The defendant makes the point that the adopted child of John and Sarah Clarkson was a child within the meaning of the statute, and

hence the remainder passed to the adopted child. It is sufficient to say that no such question is presented by this record. The deed of adoption was excluded by the trial court on the objection of the plaintiffs, who are the appellants; the defendant took no appeal and is in no way complaining of any ruling of the trial court." The question whether the adopted child was within the provision of the statute was not in that case and not before the court. The court simply held, as the record in the case showed, that John Clarkson left no children, and not having a father or mother living at the time of his death, the remainder vested in his brothers and sisters according to the last clause of the statute. The statute provides: "From the time of the filing of the deed with the recorder, the child or children adopted shall have the same rights against the person or persons executing the same for support and maintenance and for proper and humane treatment, as a child has by law against lawful parents; and such adopted child shall have, in all respects, and enjoy all such rights and privileges, as against the persons executing the deed of adoption. This provision shall not extend to other parties, but is wholly confined to parties executing the deed of adoption."

Adoption was unknown to the common law, being repugnant to its principles and the institution upon which it was builded, but was recognized by the civil law from its earliest day, and exists in this country by the statutes of every State so far as we have had occasion to examine. The child becomes in a legal sense the child of the adopting parents; and at the same time remains the child of its natural parents, and is not deprived of its rights of inheritance from them unless expressly so provided by statute. *Wagner v. Varner*, 50 Iowa, 534. In *Moran v. Stewart*, 122 Mo. 295, a construction was put upon this statute in conformity

with this view.   Upon this subject the court said: "This and other sections of the statute concerning the adoption of children have been before the court directly and indirectly on several occasions.  *Reinders v. Koppelmann*, 68 Mo. 482; s. c., 94 Mo. 338; *Sharkey v. McDermott*, 91 Mo. 647; *Davis v. Hendricks*, 99 Mo. 478; *Fosburgh v. Rogers*, 114 Mo. 122.  The conclusion to be drawn from these cases, so far as they bear upon the question in hand, is this:  The husband or wife, or both, may adopt a child as his, her or their heir and the adopted child will inherit the same as if born of such adopting parents in lawful wedlock.  For all purposes of inheritance from the adopting parent, the adopted child becomes and is the lawful child of such adopting parent."   Such has been the generally accepted interpretation put upon the statute of adoption by the American courts.

By the act of adoption, Roy Conyers became the child and heir, in a certain sense, of John and Sarah Clarkson, but it does not follow that such adopted child takes the statutory estate created under the Revised Statutes of 1855, the statute in force when the deed in question was executed.   The phrase "bodily heirs" is a well established technical term, and is defined in Anderson's Dictionary of Law, 508, as "an heir begotten of the body; a lineal descendant."   The words "children," "issue" and "heirs" are not synonymous terms.   The rule of construction is that technical words or phrases which have acquired a peculiar and appropriate meaning in law shall be construed according to such peculiar and appropriate meaning, unless it appears that the words were not used in their technical sense.   When words and phrases have received a fixed legal interpretation by repeated decisions, such words and phrases, when employed in deeds or other written instruments, are to receive such fixed

legal interpretation as a long line of decisions attached to them. In consequence of the application of this rule, to the construction of the deed from Jabez to John Clarkson, it was held in *Clarkson v. Clarkson*, *supra*, that John Clarkson only acquired a life estate. That the grantor therein named intended to use the term "bodily heirs" in its primary technical sense, there can be no doubt.

In *Reinders v. Koppelman*, 94 Mo. 338, it was held in construing the provisions of a will in which the testator gave his wife a life estate in all his property, and at her death one half the remainder to the nearest and lawful heirs of the testator and that of his wife, the testator and his wife each having brothers and sisters living at the date of the will, that an adopted child was not entitled to inherit under the provisions of the will, but that the remainder went to the brothers and sisters of the testator's wife. Upon this subject the court said: "In common parlance we find the terms heirs-at-law and lawful heirs are used indiscriminately, as synonyms and convertible terms, and wherever either is used they are invariably referred to the heirs upon whom descent is cast by law, and not to an heir by adoption. The relation of an heir by adoption is an exceptional and unusual one, and does not come within the ordinary and usual meaning of the words lawful heirs, and these words ought not to be held *ex vi termini* to include an adopted heir." In the concluding paragraph of the opinion, in speaking of the intention of the testator, the court remarked: "It is impossible to believe that he could have intended the child of a stranger manufactured into an heir by deed. The testator devised to his widow a life estate, the remainder to others; in that remainder she had no interest. She could neither convey it by deed nor devise it by will; she had no more power to convey it by deed

of adoption than by deed in any other form; that which she could not do directly she can not be permitted to do indirectly."

When the statute of 1855, now under consideration, was passed, there was no law in this State authorizing the adoption of children, the adoption statutes not having been passed until some years later. The language of the statute shows that the legislature intended to use the words "children" or "heirs" in their primary technical sense, as lineal descendants when applied to "children" and as heirs upon whom the law cast the estate immediately on the death of the ancestor when applied to heirs, and that a child or heir by adoption was not contemplated. This is unquestionably in line with the drift of modern judicial thought. John Clarkson, having only a life estate in the premises in controversy, was powerless to convey the remainder by deed of adoption or by any other method known to law. If, then, he could not convey or in anywise dispose of the remainder, it would be illogical to say that by the contractural rights conferred by the deed of adoption he could convert a mere stranger into an heir, so as to work a result which was not in his power to effect by usual methods, and thereby change the dissent and devolution of such remainder.

It was not in the power of John Clarkson to take away the statutory estate so created and vested in his brothers and sisters, if he had no bodily heirs, and confer the same upon an adopted child. The right to inherit by virtue of a deed of adoption does not make the beneficiary a "bodily heir," a child in fact of the adopting parent or parents. In *Schafer v. Eneu*, 54 Pa. St. 304, it was held that the adopted children are not children of the persons by whom they have been adopted, and that the act of the legislature in passing

the adoption statute did not attempt the impossible; the court saying, "Giving an adopted son the right to inherit does not make him a son in fact; he is so regarded in law only as to give him the right to inherit." In the case of *Keegan v. Geraghty et al.*, 101 Ill. 26, SHELDON, J., in an opinion of that court holding that an adopted child can take by descent only from the person adopting, and not from the lineal and collateral kindred of the adopting parent, uses this pertinent language: "We can not admit this anomalous right here claimed in a stranger in blood, to take by descent in exclusion of kindred, to be given by any doubtful implication or vague generality of language. As against the adopted child the statute should be strictly construed, because it is in derogation of the general law of inheritance, which is founded on natural relationship, and is a rule of succession according to nature which has prevailed from time immemorial." Although the above cited cases may differ somewhat in detail from the case at bar, yet the principles upon which they turn apply to and are decisive of it. We are therefore of the opinion that as to the land in controversy, Roy Conyers is not to be deemed a child within the meaning of the act of 1855 above cited. and that the remainder does not pass to such adopted child. The authorities cited by counsel for defendant in support of their contention bear upon the right of the adopted child to inherit from the adopting parents, and do not affect the question in this case. In the view we have taken of the case involved in this record, the court committed no error in refusing defendant's first, second and third declarations of law.

But it is insisted that the court erred in refusing the seventh instruction asked in behalf of defendant, to the effect that the plaintiff was not entitled to recover rents and profits for any period preceding the com-

mencement of this action.   Under section 4638 of the
Revised Statutes 1889, plaintiff in ejectment is entitled
to recover only rents and profits for a period previous
to the commencement of an action, when it is shown
on the trial that the defendant had knowledge of the
plaintiff's claim prior to the commencement of the
action.

It is conceded that there was no evidence of such
knowledge in this case.   The law applicable to ques-
tions of this nature has been so often declared in favor
of the contention of appellant that it is scarcely neces-
sary to repeat it.   See *Robidoux v. Casseleggi*, 81 Mo.
459, and cases cited.   For the refusal to give plaintiffs'
seventh instruction the case is reversed and remanded
with directions that judgment be entered in accordance
with the views herein expressed, computing rents and
profits from February 25, 1895, the date of the institu-
tion of this suit.   BRACE, P. J., and WILLIAMS, J.,
concur.