## FRAME v. HUMPHREYS, Appellant.

### Division One, June 29, 1901.

1. **Deed to A and Her Bodily Heirs:** STATUTE 1835. A deed to "Mary Ann Walker and the heirs of her body" under the statute of 1835, which is very different from our present statute, conveyed a life estate to the said Mary Ann and a fee simple absolute to her oldest child then living, although she then had other living children. And a subsequent deed by her and her husband, and a quitclaim by her eldest child, made in her lifetime, conveyed the entire title and estate to their common grantee.

2. ———: ———: ACCORDING TO COURSE OF COMMON LAW. The deed dated September 16, 1843, conveyed 240 acres of land to "Mary Ann Walker and the heirs of her body." At that time she had fourteen children living, and afterwards she and her husband and a part of the children, including the oldest child, conveyed the land to defendant's ancestor, and this suit is by descendants of such children of Mary Ann as had conveyed their interests in the land and had departed this life prior to her death in 1888. At that time the Revised Statutes of 1835 (sec. 5, p. 119) were in force, to-wit: "Any person who would, by common law become seized in fee tail of any real estate, shall become seized thereof for his natural life only, and the remainder shall pass in fee simple absolute to the person to whom the estate tail would on the death of the first donee, or devisee, in tail, first pass according to the common law, by virtue of the grant or devise." *Held,* that, according to the course of the common law and this statute, this deed created a life estate in Mary Ann, and a fee simple absolute in her eldest child then living, and gave him a right to immediate possession upon the termination

of her life estate, and hence a deed by the said Mary Ann and her husband and a subsequent quitclaim by this oldest child, conveyed the entire estate to their common grantee, and then other children have no title or interest therein. This deed under that statute did not create a contingent remainder, but a fee simple absolute in the oldest child subject to a lifetime possession by the first taker.

Appeal from Grundy Circuit Court.—*Hon. H. G. Orton,* Special Judge.

REVERSED.

*James M. Frame* and *Joseph S. Parker* for plaintiff-appellant.

(1) The deed to Mary Ann Walker and the heirs of her body was such a conveyance as at common law created a fee tail general. 2 Sharswood's Blackstone, p. 214; Clarkson v. Clarkson, 125 Mo. 381; 1 Washburn on Real Prop., 253; Reed v. Lane, 122 Mo. 311; Farrar v. Christy, 24 Mo. 453; Bone v. Tyrrell, 113 Mo. 175; Rozier v. Graham, 146 Mo. 352; Burris v. Page, 12 Mo. 232; Emmerson v. Hughes, 110 Mo. 631. (2) The statute in force when this deed was executed, destroyed the fee tail in Mary Ann Walker and instead thereof gave her a life estate only and a remainder in fee simple absolute to the person to whom the estate tail would first pass on the death of the first donee in tail, according to the course of the common law by virtue of the gift, grant or devise. R. S. 1834, sec. 5, p. 118; Burris v. Page, 12 Mo. 232; Farrar v. Christy, 24 Mo. 453. (3) According to the common law, the title in fee simple absolute, to the premises in controversy, first passed to John D. Walker, the eldest son of the said Mary Ann Walker, upon her death if he survived her. 1 Washburn (3 Ed.), sec. 53, chap. 4; Tiedeman on Real Property, 666; Burris v. Page, 12

Vol 164 mo—22

Mo. 359; Rozier v. Graham, 146 Mo. 352; 2 Cruise Digest (1856), p. 152, sec. 17; Dimbitz on Land Titles, part 2, chap. 4, sec. 29, p. 212.   (4) But the eldest son, John D., having died before his mother, Mary Ann Walker, leaving a son Porter Walker, the said Porter became, through his deceased father, the heir of the said Mary Ann, his grandmother, for the expression "heirs of the body" means lawful issue, children, and through them grandchildren in direct line.   Emmerson v. Hughes, 110 Mo. 631; 3 Washburn on Real Prop. (3 Ed.), sec. 7, chap. 1; Rozier v. Graham, 146 Mo. 352; 2 Cruise Digest (1856), p. 163, sec. 21.   (5) The deeds made by John D. Walker and Elizabeth Benson in 1855 did not pass any interest in these premises to defendant as neither of them survived their mother, Mary Ann Walker, and the deeds to plaintiff by the children of the said John D. and Elizabeth who survived their grandmother, Mary Ann Walker, pass to plaintiff all of the interest they would have taken in the premises in controversy had they survived her.   Emmerson v. Hughes, 110 Mo. 631.   (6) Where the words of a statute are plain they must be strictly followed.   The correct rule of construction is to construe a statute according to its grammatical and natural sense, unless the context shows plainly that a different sense was intended.   Potter's Dwarris on Statutes and Constitutions, pp. 204, 196, 143, 126; 23 Am. and Eng. Ency. Law, pp. 298, 305; Rosenbolt v. Herman, 70 Mo. 451; Hicks v. Jameson, 10 Mo. 38; Hamilton v. St. Louis Co. Court, 15 Mo. 201; Murphy and Glover Test Oath Cases, 41 Mo. 374; Fry v. Railroad, 73 Ill. 402.

*O. G. Bain* and *A. H. Burkeholder* for defendant-appellant.

(1) The doctrine of primogeniture, insisted on by respond-

ent, is not the law of this State.   Rozier v. Graham, 146 Mo. 360.   (2) The deed from Jewett Norris to Mary Ann Walker either vested the fee in her, or in her and her children and Sarah B. Allen jointly, as tenants in common. 1 Wash. (5 Ed.), p. 104, sec. 22; 1 Cooley's Bla. (3 Ed.), bk. 2, pp. 109-114; Fanning v. Doan, 128 Mo. 328; Waddell v. Waddell, 99 Mo. 338; Green v. Sutton, 50 Mo. 192; Rines v. Mansfield, 96 Mo. 399; Gathwright v. Callaway Co., 10 Mo. 664. (3) Said deed under the rule in Shelley's case, in force at the time the deed was made, conveyed the fee in the land to Mary Ann Walker, the grantee.   Riggins v. McClellan, 28 Mo. 23; Tesson v. Newman, 62 Mo. 198; Muldrow v. White, 67 Mo. 471; 2 Wash. (5 Ed.), p. 600, sec. 4.   (4) Said deed was construed by the parties to it as vesting the fee in Mary Ann Walker, the grantee.   Patterson v. Camden, 25 Mo. 13; St. Louis Gas Light Co. v. St. Louis, 46 Mo. 121; Jones v. Delassus, 84 Mo. 545.

BRACE, P. J.—This is an action in ejectment, in which, from a judgment of the circuit court of Grundy county in favor of the plaintiff for an undivided two-tenths of the real estate claimed in his petition, both parties appeal.   There was no dispute about the facts.   The case was tried by the court without a jury.   Upon the documentary evidence and an agreed statement of facts, Jewett Norris is the common source of title.

The premises in controversy is a part of the land conveyed by deed of said Norris and wife, as follows:

"This indenture made and entered into this sixteenth day of September, 1843, by and between Jewett Norris and Sarah, his wife, of Grundy county, Missouri, of the first part, and Mary Ann Walker, of the same place, of the second part,

"Witnesseth: That the said party of the first part for and in consideration of the sum of $1,200 to the said party of the

first part in hand paid, the receipt whereof is hereby acknowledged, have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell and convey to the said party of the second part and the heirs of her body [and to Sarah B. Allen if fully understood and agreed upon shall be considered to all intents and purposes, in law and in equity, so far as this deed is concerned, an heir of the body of the said Mary Ann Walker] a certain tract or parcel of land, lying and being in the county of Grundy aforesaid and described as follows, to-wit:

"One hundred and twenty rods off the north end of the east half of the northeast quarter of section eight in range twenty-four of township sixty-one north of the base line and west of the fifth principal meridian. Likewise one hundred and twenty rods off the north side of the northwest quarter and one hundred and twenty rods off the north end of the west half of the northeast quarter of section number nine in range twenty-four of township sixty-one, containing by estimation 240 acres of land, with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining and all the estate, right and title, interest, claims and demands whatsoever of the party of the first part, in and to the said lands and premises, and every part and parcel thereof.

"To have and to hold the said land and premises above mentioned and every part and parcel thereof, with the appurtenances unto the said party of the second part and her heirs and assigns as aforesaid, to the only proper use and behoof of the said party of the second part, her heirs as aforesaid and assigns forever. And the said party of the first part for himself, his heirs, executors and administrators and all and every other person will warrant and forever defend to the said party of the second part, her heirs and assigns."

The questions in the case turn upon the construction of

this deed.    At the time it was made, the said Mary Ann Walker was the wife of Thomas Walker by whom she then had fourteen living children and Thomas Walker had one other child by a former wife who was the Sarah P. Allen mentioned in the deed.

Afterwards, on the twenty-fourth of March, 1846, the said Mary Ann and Thomas Walker executed a deed of trust on the premises of that date to secure an indebtedness to Grundy county, which was afterwards duly foreclosed, and the premises purchased by and duly conveyed to John B. McDonald by deed dated February 8, 1848.

Afterwards, on the sixth day of January, 1854, the said Mary Ann and Thomas Walker by their quitclaim deed of that date, duly executed, conveyed all their interest in the premises to said McDonald, and on the fourteenth of March, 1855, two of the said fourteen children having in the meantime died without issue, the remaining twelve, viz., William Walker, Martha Walker, Yancy Walker, Lafayette Walker, Alonzo Walker, Thomas Walker, Charles Walker, John D. Walker, Jane P. Hughes, Elizabeth D. Benson, Mary A. Runyan and Frances Walker, by their quitclaim deed of that date duly executed, also conveyed all their interest in the premises, to the said McDonald.    The defendants thereafter by mean conveyances acquired the title of the said McDonald, and since that date he and his mesne grantors have been in the continuous, peaceable and uninterrupted possession of the premises claiming title as McDonald and his grantors had been prior thereto, from the date of the Norris deed.    On the twenty-seventh of December, 1888, the said Mary Ann Walker died.    Prior to her death five of her fourteen children aforesaid had also died, viz., John D. Walker, Alonzo Walker, Elizabeth D. Benson, Yancy Walker and Charles Walker.    The other seven survived her. Yancy Walker and Charles Walker died without issue.    John D. Walker, who was the oldest son of the said Mary Ann, died

leaving two children, Porter Walker and Lavena Graves, who survived their grandmother.   Elizabeth D. Benson died leaving three children, Edward Benson, Ruth Shanklin and Beatrice Dunlap, who survived their grandmother, and Alonzo Walker died leaving one child, Dele Walker, who survived his grandmother.

On the thirteenth day of October, 1898, the said Edward Benson, Ruth Shanklin, and Beatrice Dunlap, by their quitclaim deed of that date, conveyed all their interest in the premises to Aaron Oldfather, and on the twenty-sixth day of November, 1898, the said Porter Walker and Serena Graves, by their quitclaim deed of that date, conveyed all their interest in the premises to the said Aaron Oldfather, who on the seventh day of December, 1898, by his quitclaim deed of that date, conveyed the premises to the plaintiff, and this is the chain of title under which he claims.

It was further agreed "that it has always been fully understood and agreed from the making of said deed by Norris, between the parties, thereto, including Thomas Walker, father of said Sarah B. Allen, and the children of Mary Ann Walker by him, that Sarah B. Allen's father had received all the estate which she had inherited from her mother, and that she was for that reason named in said deed as a grantee, and that the provisions and conditions in the granting clause of said deed, with reference to Sarah B. Allen whereby she was to be considered as an heir of the body of her stepmother, were used and inserted in said clause for the sole purpose of limiting and defining the interest she was to have in the land conveyed, including the land in controversy in this suit, and to make it the same as an heir or a child of her stepmother and no more."

The statute in force at the time the deed from Norris was made is as follows:

"Any person who would, by common law, become seized in

fee tail of any real estate, shall become seized thereof for his natural life only, and the remainder shall pass in fee simple absolute to the person to whom the estate tail would on the death of the first donee, or devisee in tail, first pass according to the common law, by virtue of the grant or devise." [R. S. 1835, p. 119, sec. 5.]

By the common law, as it existed at the beginning of the Reign of Edward the First, the grant in the deed of Norris to Mary Ann Walker "and the heirs of her body," would have vested in her an estate in fee simple conditional, in the premises, and she then having issue born, the condition was performed the instant the grant was made; she could have aliened the fee, and her grantee would have taken the premises in fee simple absolute. [4 Kent (14 Ed.), p. 11; 1 Cooley's Black. (4 Ed.), pp. 111 and 112.]

By the statute *De Donis,* 13 Edward 1, this conditional fee simple which became absolute the instant that issue was born was divided into two parts leaving in the donee a new kind of particular estate denominated a fee tail, and investing the donor with the reversion in fee simple, expectant upon the failure of issue. [4 Kent (14 Ed.), p. 13; 1 Cooley's Black. (4 Ed.), pp. 112 and 113.] By this act, estates tail were created or at least revived, and perpetuities were sought to be maintained.

It would serve no good purpose now to review the cases in which the English courts struggled to get rid of the mischiefs of these fettered inheritances, for the reason that this statute never was in force in this jurisdiction. All we have or ever have had of it, is its nomenclature.

By the act of the Territorial Legislature of January 19, 1816, by which the common law was introduced and first became the rule of decision in this jurisdiction, it was expressly provided that "the doctrine of entails shall never be allowed, and in all cases when any real estate shall be entailed, the

whole right and interest of, in and to the same, shall vest in
fee simple in the person having the first reversion or remainder
in said estate, after the life estate is determined in said estate."
[1 Mo. Terr. Laws, p. 436.]    This act continued in force until
the first revision of 1825, provided for by the Constitution of
1820, when the following section in the chapter entitled *"Con-
veyances"* was substituted for it:

"Sec. 4.    Be it further enacted, that in cases where by the
common law any person or persons would now be or might
hereafter become seized in fee tail, of any lands, tenements
or hereditaments, by virtue of any devise, gift, grant, or other
conveyance, heretofore made or hereafter to be made, or by any
other means whatsoever, such person or persons, instead of be-
coming seized thereof in fee tail, shall be deemed and adjudged
to be and become seized thereof for his or her natural life only;
and the remainder shall pass in fee simple absolute, to the
person or persons to whom the estate tail would, on the death
of the first grantee, devisee, or donee, in tail, first pass, accord-
ing to the course of the common law, by virtue of such devise,
gift, grant or conveyance."

This act continued in force until the revision of 1835,
when section 5, first quoted, of the chapter of the same title,
took its place.

There is no substantial difference between the Acts of 1825
and 1835, and while the Act of 1816 is somewhat vague, its pur-
pose and effect was the same as the later acts, which may be re-
garded as legislative interpretations of its meaning.

As was said by SCOTT, J., in Farrar v. Christy, 24 Mo.
l. c. 469, of the Act of 1825: "There is nothing in the terms
of the act which shows that it was not designed to destroy all
estates tail.    Entails were not congenial to our institutions, and
the act was intended to break them up.    If none but those who
would have been heirs of the entail were intended, then it is

obvious that the statute would not reach any of those cases in which the first grantee in tail had no issue. We are not warranted in supposing that the Legislature only intended to break up particular entails. The reason. that would break up one would break up all others." That such was the purpose and effect of the legislation from the beginning, is clear. Hence, the statute *De Donis* never having been in force in this State, we shall derive no assistance in the construction of the statute in question, by rules established in the construction of that statute; which, by the way, disposes of the defendant's third point "that the deed, under the rule in Shelly's case, conveyed the fee to the land to Mary Ann Walker."

The statute in question dealt with the whole estate, which it divided into two parts, a life estate, and a remainder in fee simple absolute. That under this statute, by the grant in the deed, to Mary A. Walker and the heirs of her body, she took only a life estate, is beyond dispute. The serious question is, to whom did the other part, the remainder in fee simple absolute, go? The answer of the statute is, to the persons to whom the estate tail would on her death first pass according to the common law, by virtue of the grant. This grant being of a fee tail general, according to the common law, its course by that law is similar, so far as it goes, to that of an estate in fee simple (Williams R. P., 120, 17 Int. Ed.), and as at the date of the grant there were living sons and daughters of the said Mary A. Walker, of whom John D. Walker was the eldest, and as to him the estate tail would first pass on the death of his mother, according to the common law (1 Cooley's Black., 4 Ed., bottom pp. 605 and 606), to him the remainder in fee simple absolute passed under the statute by virtue of the grant, and he then having an immediate right to the possession of the premises, upon the determination of the precedent estate, the title in fee simple absolute vested in him, subject only to the

life estate of his mother. [Burris v. Page, 12 Mo. 232; 4 Kent (14 Ed.), 202.] On his death this title would have passed to his children, the said Porter Walker and Serena Graves, and thereafter to plaintiff's grantor by their quitclaim deed of November 26, 1898, but for the fact that it had already passed to McDonald by the quitclaim deed of the said John D. Walker et al., of March 14, 1855, and thereafter by mesne conveyances to the defendant.

Although the common law of descents was never in force in this jurisdiction (Terr. Laws of Louisiana, 1807, cap. 39; Terr. Laws of Mo. 1815, cap. 143; 1 R. S. 1825, p. 326; R. S. 1835, p. 222), that law was, as we have seen, preserved in the statute of conveyances, not as a law of descent, but to the extent only and for the single purpose of affording a rule for the delimitation of an estate tail created by grant or devise, until the year 1845, when this last vestige of the system of feudal tenures was swept from our statute book by the revision of that year. Under that statute (Revised Statutes 1845, p. 218, cap. 32, sec. 1), had it been in force when this deed was made, the remainder would have become contingent, and would not have vested, until the death of Mary Ann Walker, when it would have vested in her then living children and grandchildren aforesaid, and the judgment of the circuit court could have been sustained. But that statute, so radically different from its predecessor, can not be applied to the deed in question, which must be governed by the law in force at the time it was made. The judgment should have been for the defendant. To meet the ruling of the circuit court, counsel for defendant contend that, considering the paragraph in the deed, in brackets, in connection with the admitted facts in the case, it appears that it was the intention of the parties to the deed, either to vest the fee simple in Mary Ann Walker, or in her and her children, and Sarah B. Allen as tenants in common. As the in-

terest, if any, of Sarah B. Allen in the premises, is not involved in this litigation, and as the result reached would be the same if this contention should be sustained, we do not deem it necessary to enter upon that phase of the controversy.

The judgment of the circuit court will be reversed. All concur.