Fred Leeper, Hiram Leeper, and Clarence R. Leeper, Appellants, v. Marvin W. Leeper, Roberta Leeper, his wife, Mary Leeper, widow of William F. Leeper, A. Heidtbrink, Lee Heidtbrink, and Orville Lowrance.—147 S. W. (2d) 660.

Division One, February 14, 1941.

*Ernest Neill, A. F. Harvey* and *Wright & Ford* for appellants.

*Livengood & Weightman* for respondents.

DALTON, C.—This action involves title to real estate in Nodaway County. The petition is in three counts, to-wit: ejectment, quiet title, and partition. The issue of title is presented in each count. Defendant Marvin W. Leeper answered, claimed title and filed a cross-action to quiet and determine title. Other defendants answered and denied generally. Evidence was taken on all counts, and on the cross-action, in one hearing before the court. The court found against plaintiffs on the first and third counts, and quieted title on the second count, and on the cross-action, in Marvin W. Leeper. Plaintiffs have appealed.

No question is raised as to the pleadings. The facts are not in dispute. The issue of title turns upon the construction of a deed. William Leeper is the common source of title. He was a resident of Nodaway County and was twice married. He had five children by a first wife and four by his second wife. He died in 1904. William F. Leeper was a son by his last marriage. Appellants are the three surviving full brothers of William F. Leeper.

On January 19, 1900, William Leeper and his wife, in consideration of love and affection and the further consideration of $1.00 executed and delivered a warranty deed conveying the real estate in question "to William F. Leeper, during his natural life and at his death to his heirs, but should he die without children then to his full brothers and their heirs." At the time of the conveyance William F. Leeper was single. He married in 1907, but no children were born of the marriage. In 1934 he and his wife, Mary A. Leeper, by proper proceedings under the provisions of Article I, Chapter 125, R. S. 1929, 1 Mo. Stat. Ann. 822 et seq., adopted respondent, Marvin W. Leeper, as their own child. The decree, among other things, provided: "That from and after this date the said Marvin Walter Heidtbrink shall be and hereby is, to all legal intent and purposes, made the child of the said William F. Leeper and Mary A. Leeper . . . as if he was their natural born child, and . . . the name . . . is hereby changed from Marvin Walter Heidtbrink to Marvin Walter Leeper, by which name he shall be hereafter known." William F. Leeper died on May 19, 1938, leaving as his sole and only heir, his adopted son Marvin Walter Leeper, and his widow Mary A. Leeper.

Marvin W. Leeper claims title on the theory that William .F. Leeper died leaving "children" and that he (respondent) is an heir of William F. Leeper, deceased, within the meaning of the words "his heirs" as they are used in the deed. The appellants contend that "under the law of Missouri at the date of the execution of this deed an adopted child was very definitely excluded from the class defined and determined, by the word 'child' or 'children,' " and that, upon the death of William F. Leeper without natural born children, appellants took title in fee simple to the real estate described.

. In addition to the facts hereinbefore set out, the record further shows that on September 18, 1899, and prior to the execution of the deed in ·question, William Leeper and his wife executed a deed. to other real estate to a son Clarence R. Leeper in fee. Clarence R. Leeper was then single. A witness testified that the father said, at the time, that this tract was near George W. Leeper's land; ·that George W. Leeper had been more or less hard to get along with; and that he wanted to deed the land to Clarence so that if Clarence couldn't get along with George he could sell out and go some place else. On September 18, 1899, William Leeper executed and delivered a deed to other real estate to his son "Hiram Lawrence Leeper, during his natural life, at his death to his heirs, but should he die without children, then to his full brothers and their heirs." This son was then single. On January 19, 1900, William Leeper executed and delivered a deed to other real estate to his son William J. Leeper "during his natural life and at his death to his heirs." William·J. Leeper was then married and had three living children.

In determining the meaning of the provisions of the deed, we "must be governed by the law in force at the time it was executed." [Frame v. Humphreys, 164 Mo. 336, 346, 64 S. W. 116; Clarkson v. Hatton, 143 Mo. 47, 52, 44 S. W. 761, 762.] "From the standpoint of time the law in effect at the time of the execution of a deed governs its validity and interpretation." [16 Am. Jur. 444, sec. 11.] "Further, deeds are to be construed according to the law in force at the time they are executed." [18 C. J. 251, sec. 195.]

It is well settled in this State that the rule to be observed in the construction of deeds, as well as wills, is to ascertain the intention of the grantor, and to give effect to such intention unless it conflicts with some positive rule of law. [Triplett v. Triplett, 332 Mo.·870, 60 S. W. (2d)· 13, 15.]

"The intention of the grantor, as gathered from the four corners of the instrument, is now the polestar of construction. That intention· may be expressed anywhere in the instrument, and in any words, the simpler and plainer the better, that will impart·it; and the court will enforce it no matter in what part of the instrument it is found." [Utter v. Sidman, 170 Mo. 284, 294, 70. S. W. 702, 705.; Keller v. Keller, 338 Mo. 731, 92 S. W. (2d) 157, 159; Norman v.

Horton, 344 Mo. 290, 296, 126 S. W. (2d) 187, 125 A. L. R. 531; White v. Kentling, 345 Mo. 526, 134 S. W. (2d) 39, 44.]

"The tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities subject to be cleared up by resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, and the subject-matter and the situation of the parties as of that time. Hence, in the construction of deeds surrounding circumstances are accorded due weight. In the consideration of these various factors, the court will place itself as nearly as possible in the position of the parties when the instrument was executed." [16 Am. Jur. 532, sec. 168.]

In construing the deed we must first consider the words "should he die without children" and determine whether or not William F. Leeper died "without children" as the word "children" was used and intended to be used in the deed. The meaning of this word determines whether the remainder in fee passed to the heirs of William F. Leeper at his death under the words "to his heirs" or whether it passed to appellants under the words "to his full brothers or their heirs." In determining this first question we are not concerned with the words "and at his death to his heirs." We do not need to determine whether respondent, Marvin W. Leeper, the adopted child, was an heir of William F. Leeper within the meaning of the words "his heirs" as used in the deed. We are not concerned with the Statutes of Descent and Distribution in force and effect at the time of the death of the life tenant nor with the statutes with reference to adoption that were in force at the time of adoption of respondent Marvin W. Leeper. We are not concerned with the rights of inheritance as such rights may have been determined subsequent to the execution and delivery of the deed.

Does the word "children" as used in the deed include a stranger to the blood of William Leeper so that a child adopted by his son William F. Leeper some 34 years after the execution and delivery of the deed would prevent the said William F. Leeper from dying "without children" and would permit the heirs of William F. Leeper to take the remainder in fee? If Marvin W. Leeper took under the deed, he took by purchase from the original grantor and not by inheritance or descent from his adopting father. [Sec. 3110, R. S. 1929, 3 Mo. Stat. Ann. 1938 (in force and effect at the time the deed was written as Sec. 4599, R. S. 1899).] At the time the deed was written, Sec. 5248, R. S. 1899, with reference to the rights of adopted children provided as follows: "From the time of filing the deed with the recorder, the child or children adopted shall have the same right against the person or persons executing the same, for support and maintenance and for proper and humane treatment, as a child has, by law, against lawful parents; and such adopted child

shall have, in all respects, and enjoy all such rights and privileges as against the persons executing the deed of adoption. *This provision shall not extend to other parties, but is wholly confined to parties executing the deed of adoption.*" (Italics ours.)

This statute did not purport to place an adopted child within the classification of a natural born child. For all purposes, however, of inheriting from the adopting parent the adopted child became the lawful child of the adopting parent, Moran v. Steward, 122 Mo. 295, 299, 26 S. W. 962, but not an heir of collateral kindred of the adopting parents. [Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585, 8 L. R. A. (N. S.) 117, 118 Am. St. Rep. 672, 9 Ann. Cas. 775.] In the case of Clarkson v. Hatton, 143 Mo. 47, 58, 44 S. W. 761, 39 L. R. A. 748, 65 Am. St. Rep. 635, it was held that the words "bodily heirs" did not include an adopted child, and that the words "children" and "heirs," as used in the Statute of 1855 abolishing *estates tail*, did not mean adopted children. The adopted child remained the child of his natural parents and was not deprived of his right to inherit from them. [Clarkson v. Hatton, supra.]

In the case of Reinders v. Koppelman, 94 Mo. 338, 343, 7 S. W. 288, the court construed the provisions of a will in which the testator gave his wife a life estate in his property and provided that at her death one-half of the remainder should go to his adopted daughter and the other half "to the nearest and lawful heirs of mine and that of my said wife, share and share alike." The wife subsequently remarried and adopted a son, but it was held that such adopted heir was entitled to no interest under the testator's will, and further that testator's adopted daughter was not included in the terms "nearest lawful heirs of mine," as those words were used in the will.

In 16 Am. Jr. 582, sec. 252 it is stated: "In the construction of deeds, an adopted child of another person is not within the meaning of the term 'children' unless adopted children are given by law the status of children of a lawful marriage."

In 18 C. J. 274, sec. 237 it is stated: "The word 'children' in the description of the grantees as the children of a specified person will be taken to mean his immediate offspring in the first degree, and to exclude grandchildren, adopted children, and illegitimate children, unless a contrary intention is disclosed by a construction of the conveyance as a whole."

In 69 C. J. 177, sec. 1200 it is stated: "While an adopted child is treated as the child of the adopting parent, ordinarily such child is not actually a child of such parent, and does not come within the usual meaning of 'children,' as used in a will to designate beneficiaries."

In 68 C. J. 178, sec. 1201 it is stated: "Statutes conferring on the adopted child the right of inheritance from the adopting person do not change the general rule that ordinarily an adopted child is

not within the usual meaning of 'children,' as used in a will to designate beneficiaries, particularly where the testator is a stranger to the adoption." See also cases collected and reviewed on notes on "adopted child as within designation of 'children' or similar phrases in wills or deeds." [18 Ann. Cas. 518; 27 L. R. A. (N. S.) 1159; 5 Missouri Law Review 259 (April, 1940).]

In the L. R. A. (N. S.) note, supra, it is said: "The ultimate test of the question whether these terms (child, children, etc.) as used in a will include adopted child or children being the intention of the testator, the question is in a degree distinct from that which arises under statutes employing these terms, though in some instances, the will being devoid of any extrinsic indications of the testators intention on the point, the courts follow the construction given to these words as used in the statutes, since the testator is supposed to have acted in view of the existing statutes and their interpretation, if any. Where the statutes are broad and comprehensive in their terms, the testator is generally held to have intended to include a child of adoption within the term 'child or children;' and in those states having a more restricted statute . . . an opposite conclusion is arrived at, in the absence of other elements showing or tending to show an intent to the contrary." In the Missouri Law Review note, supra, (p. 260) it is said: "The holdings are numerous to the effect that the term 'children' will not ordinarily be construed to include adopted children, but this general rule has been departed from under some circumstances. . . . In the cases where the gift has been to a third person, with remainder to his 'child or children,' the usual construction has been that children adopted prior to the date of the will should take under the gift, while those adopted subsequent to the date of the will should not." (Citing cases.)

In the case of Brock v. Dorman, 339 Mo. 611, 98 S. W. (2d) 672, in construing a will, probated prior to the present adoption statutes, which devised land to testators son for life and at his death "to go to his heirs," it was held that a person adopted by the son by decree of court subsequent to present adoption statutes was "an heir" and entitled to the remainder on the son's death, but this court stated: "If he (testator) had even said 'children,' or 'descendants,' or 'issue,' or 'heirs of the body' of the life tenant, we would have had a different expression of intention."

In the case of Grundmann v. Wilde, 346 Mo. 327, 141 S. W. (2d) 778, this court construed a will probated in 1900. It provided that in case of the death of either one of testator's children "without leaving lawful issue," then the other child should inherit his or her share. Subsequently the testator's son died leaving an adopted son. In passing upon the rights of the adopted son under the will the court said that by no stretch of the imagination could it be ruled

that the phrase "lawful issue," as used in the will, "included an adopted child of either of said children of the testator."

In the case of Melek v. Curators of the University of Missouri, 213 Mo. App. 572, 250 S. W. 614, the court construed a will which was executed in 1902 and probated the following year. It provided that one-half of testator's estate should be held in trust and the interest paid to his daughter and after the death of his daughter for the trustee "to hold and control and keep loaned out all of said money until my daughter's children become of legal age . . . if my daughter dies leaving no child or children, then I want said money to be turned over to the Curators of the University of the State of Missouri" in trust for the same purpose. At the time the will was executed the daughter had no children, but she subsequently adopted the plaintiff and died leaving no child of any kind other than the plaintiff. After a careful review of the decisions of this court it was held: "There is nothing in the will and surrounding circumstances to show that the testator used the words 'child or children' in a sense to include an adopted child," and that plaintiff's adoption did not make her a child of testator's daughter within the meaning of the words used in the will.

As the statutes and decisions of this State stood at the date of the execution and delivery of the deed, an adopted child was not included in the word "children." The adoption statute, at and prior to the date of the deed, did not purport to make the adopted person a child of his adopting parents as fully as if born in lawful wedlock, but only gave him certain rights of a child with reference to his adopting parents. From the deed and surrounding circumstances, we hold that the grantor did not intend to include an adopted child of William F. Leeper within the meaning of the word "children" as that word was used in the deed. Accordingly, respondent, Marvin W. Leeper, took nothing under the deed. Upon the death of William F. Leeper without children, as the word "children" was used in the deed, the appellants, the full brothers of William F. Leeper, took title in fee simple to the real estate in controversy.

The judgment is reversed and the cause remanded on each count with directions to find for appellants and against respondents on the second count of appellants' petition and upon the cross-action of Marvin W. Leeper and to quiet and determine title in appellants, to hold said finding in abeyance pending further proceedings on the first and third counts, not inconsistent with this opinion, and then, upon final determination of the first and third counts, that one judgment be entered covering all counts. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.

452

DALTON, C.—Respondent Marvin W. Leeper insists that the opinion is directly in conflict with St. Louis Union Trust Company v. Hill, 336 Mo. 17 (En Banc), 76 S. W. (2d) 685, and Brock v. Dorman, 339 Mo. 611, 98 S. W. (2d) 673. He contends that his rights are determined by the law at the date of his adoption and not at the date of the execution of the deed; that a contingent remainder was created by the deed and he was within the classification of those designated to take at the death of the life tenant; that the word "children" included adopted children; and that the old adoption statute has been superceded by the new statute which is controlling. He insists that, since by his adoption in 1934 he became the child of William F. Leeper and wife, as fully as though born to them in lawful wedlock, William F. Leeper could not and did not "die without children." Most of these matters were fully discussed in the opinion, but the cases mentioned were not discussed, since they were not applicable to the facts before us.

The first case involved the construction of a will executed April 4, 1918. Testator died September 5, 1918. Both dates subsequent to the enactment in 1917 of our present adoption statutes, Secs. 14073-14081, Mo. Stat. Ann., pp. 822-828. In stating the consequences of adoption, Sec. 14079 provides: "Said child shall thereafter be deemed and held to be for every purpose, the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock. Said child shall be entitled to proper support, nurture and care from said parents by adoption, and shall be capable of inheriting from, and as the child of said parents as fully as though born to them in lawful wedlock." An exception is provided where property is expressly limited to heirs of the body.

By the will under consideration in the case of St. Louis Union Trust Company v. Hill, supra, testator left a life estate in equal shares to all his children, with remainder to their heirs at law.

In 1929, testator's son, Frank W. Hill, Jr., and his wife, by decree of court under said statutes, adopted two children. Frank W. Hill, Jr., died shortly thereafter. The adopted children claimed as heirs at law of Frank W. Hill, Jr., and as such claimed to be entitled to take as remaindermen of Frank W. Hill, Jr., under the will of Frank W. Hill, Sr. The sisters of Frank W. Hill, Jr., claimed that their father intended by his will to limit remaindermen under the will to the heirs of his blood and not to strangers. The court said (336 Mo. 17, 76 S. W. (2d) 685, 687): "As to whether the appellants (the adopted sons of Frank W. Hill, Jr.), were his heirs at law at the time of his death depends upon the Statutes of Descent and Distribution in force and effect at the time of his death, and the statutes on adoption that were in force at the time the appellants were

adopted by Frank W. Hill, Jr. . . . These appellants were made the heirs at law of Frank W. Hill, Jr., not by contract but by complying with the adoption statutes. . . . By decree of court they were declared to be his adopted children, and it must follow that they were the heirs at law of their adopting father. . . . *This will was executed April 4, 1918, and at that time the testator is presumed to have known the adoption statutes now in force and effect as passed by the 1917 Legislature.*" (Italics ours.)

The court then reviewed in detail the 1917 adoption statutes and reached the conclusion that appellants (the adopted children) were entitled to take unless by the will the property was expressly limited to the heirs of the body of Frank W. Hill, Jr. The court then said: "With this definition (of 'expressly' a term used in Sec. 14079) in mind we find nothing in the will that shows that the testator intended to leave his property to the heirs of the body of Frank W. Hill, Jr. We believe under the facts in this case the appellants would have been included, even if the words 'heirs at law' were used interchangeably with the word 'child' or 'grandchild.' . . . If he (testator) did not want an adopted child to have any of his property he could have easily provided for such a contingency in his will by *expressly limiting* his property to go to the bodily heirs of his son, but he did not do so."

The case is not applicable here, since at the time the deed was written in 1900 there was no such adoption statute. Section 5248, R. S. 1899, was then in force and effect. It contained no such provisions, but only gave the adopted child "rights and privileges as against the persons executing the deed of adoption." Provision was made for one "to adopt any child or children as his or her heir," but the child so adopted remained the child of its natural parents. [Sec. 5246, R. S. 1899; Hockaday v. Lynn, 200 Mo. 456, 473, 98 S. W. 585.] William Leeper is, of course, presumed to have known the adoption statutes as in force and effect at the time the deed was written, and to have prepared the deed accordingly. The word "children" was not used in the deed in the light of a statute making an adopted child the child "for every purpose" of its adopting parents, but in the light of a statute which only gave the adopted child *the rights of a child* against its adopting parents, while at the same time leaving such adopted child the child of its natural parents. An adopted child, under the law of this State at the time the deed was written, only *stood "in the same relation of heirship* to the estate possessed by the adopting parent at the time of his or her death, that a natural and lawfully born child would occupy under similar circumstances" (Williams v. Rollins, 271 Mo. 150, 195 S. W. 1009), but such child remained the child of its natural parents. The word "children" as used in the deed did not include adopted children and William F. Leeper died "without children," as that word was used in the deed.

Although this court in the case of St. Louis Union Trust Company v. Hill, supra, held that under the 1917 adoption statute "the adopted child is taken out of the blood stream of its natural parents and placed by the operation of law in the blood stream of its adopting parents," and, although respondent, Marvin W. Leeper, under the present adoption statute, was, after 1934, a child of William F. Leeper and wife as fully as if born to them in lawful wedlock, and, although as such adopted child he was entitled to inherit from them and through them, as "a child" and as "an heir," he was not a child of William F. Leeper within the meaning of the word "children" as that word was used in the deed written in 1900. The court in the Hill case did not, and we find no decision of this court that does, undertake to take the present meaning of the word "children" as now used in deeds written subsequent to the enactment of the 1917 adoption statutes, and to make such meaning applicable to the word "children" as used in a deed written prior to that act when, under the law then in force, the word "children" did not mean, or include adopted children.

By determining the meaning of the word "children," we determine whether the "heirs" of William F. Leeper took upon his death or whether "his full brothers and their heirs" took the remainder. Having decided that his full brother took the remainder under the terms of the deed the question of descents and distribution, or inheritance and the meaning of the words "to his heirs" were not discussed. Respondent insists that we should have done so.

Unless this court first found that William F. Leeper died leaving "children" as that word was used in the deed, the question of descent and distribution, the right of inheritance, and the meaning of the words "to his heirs" could not be involved in this case, because if William F. Leeper died without "children," as that word was used in the deed, the fee passed "to his full brothers and their heirs" and the question of descent and distribution of inheritance was not involved. To illustrate further, appellants claimed that the deed created a life estate in William F. Leeper with a vested remainder to the full brothers of William F. Leeper, subject only to being divested in the event he died leaving a child (as that word was used) of his blood. While on the other hand respondent contended that the deed created a life estate in William F. Leeper with a contingent remainder to those who should be "the heirs" of William F. Leeper at his death, citing Secs. 562 and 3110, R. S. 1929, as determining who should take. What respondent overlooks is the fact that the determining factor as to whether the remainder passed to the "heirs" of William F. Leeper or to "his full brothers and their heirs" was conditioned solely upon whether William F. Leeper should die with, or without "children," and that the meaning of the term "children" must be

determined in accordance with the laws in force at the time the deed was executed.

The Brock case, supra, involved a construction of the will of James Brock who died in 1915 devising land to his son Samuel Brock "to have and to hold, during his natural life and after his death to go to his heirs." Samuel Brock and wife had no children, born to them, but prior to his death, they adopted Frances Hickey by a decree of the circuit court under the 1917 adoption statutes. Samuel Brock died and Frances Hickey conveyed, to her mother by adoption, who then brought the suit to quiet and determine title.

Defendants, the grandchildren and great grandchildren of the testator, contended that at the time the will was made the law of Missouri was that an adopted child did not "inherit the estate of any member of the adopting family, other than the adopting parent, and so did not inherit the estate of ancestors or collateral kin of the adopting parent.

. The court said (339 Mo. 611, 98 S. W. (2d) 672, 674): "If the testator had provided that, upon the death of the life tenant, the remainder should go to his own heirs, then it might be possible to sustain defendants' contention. But that was not what he said. He provided that it should go to the life tenant's heirs. 'The word "heir," unqualified by any adjective, is a technical word denoting the person on whom the law casts the inheritance on the ancestor's decease.' . . . That question is determined by statutes on descents, and 'it has been held by this court that an adopted child was a child (of the adopting parents) within the meaning of (our) statute on descents,' although adopted under the deed of adoption statute. . . . The question here is not whether Frances Hickey was capable of inheriting from the testator but whether she can take under the designation therein of 'heirs' of Samuel Brock.''

The court then held that under the statutes in force when the will was written, a child adopted by deed was an heir of the adopting parents within the meaning of our Statute on Descents and Distribution; that when the testator used the words "after his (the life tenant's) death to go to his heirs," he was presumed to have done so under the then laws; that under the statutes then in force a child even adopted by deed would come within the classification of "heirs" of Samuel Brock; and that it was, therefore, within the contemplation of the testator under the laws then in existence that an adopted child under the then adoption statutes would be within the classification of "heirs" as used in the will. The court said: "Under these sections (now Secs. 562 and 3110, R. S. 1929), the vesting of the fee simple estate devised or conveyed is postponed until the termination of the life estate, and made to vest in the persons who are the heirs of such tenant for life at that time and not those who are the heirs of the testator. Since Frances Hickey would have been an heir of Samuel

Brock at his death whether she had been adopted by the deed of adoption method . . . or by the present method by court decree . . ., how could the result be changed by considering that James Brock in making his will designated the 'heirs' of the life tenant to take the remainder at the termination thereof, in the light of the law or adoption as it then was? . . . As to the effect of the adoption by deed law, this court said: 'The law of inheritance is a creature of this statute (of descents). . . . When adopted children were made heirs under the designation of "children," no change in the law of descents became necessary, but these "children" took their place automatically by that name in the descending line and they and their descendants have ever since inherited in that line from the adopting ancestors. . . . The statute of adoption places the adopted child next in the line of descent from the ancestor, of whom, *for the purpose of inheritance*, he becomes the child and heir.' [In re Cupples' Estate, 272 Mo. 465, 473, 199 S. W. 556, 558.] . . . Defendant's theory is that the testator meant for the property to go to his own descendants. What they overlook is that he did not provide that this land should go to his own 'heirs' when the life estate terminated, . . . If he had even said 'children,' or 'descendants,' or 'issue,' or 'heirs of the body' of the life tenant, we would have had a different expression of intention."

It is apparent, therefore, that there is nothing in the case of Brock v. Dorman, supra, that in any way conflicts with the opinion in this case. It is further apparent that the Brock case deals with descents and distribution and would only become applicable here, if title had passed to the "heirs" of the life tenant, rather than "to his full brothers and their heirs."

The motion for rehearing is overruled. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.