NO.    95-416

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

McCANN RANCH, INC.,
a Montana corporation,

        Plaintiff and Respondent,

    v.

SHARON  QUIGLEY-McCANN,

        Defendant and Appellant.

FILED

APR 18 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifteenth Judicial District,
                In and for the County of Roosevelt,
                The Honorable John Warner, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            K. Dale Schwanke and Francis X. Clinch,
            Jardine, Stephenson, Blewett & Weaver,
            Great Falls, Montana

        For Respondent:

            Patrick M. Sullivan, Poore, Roth & Robinson,
            Butte, Montana


                    Submitted on Briefs:  February 29, 1996

                            Decided:  April 18, 1996

Filed:



                        Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Sharon Quigley-McCann (Sharon) appeals the valuation of her stock in McCann Ranch, Inc. (MRI), by the Fifteenth Judicial District Court, Roosevelt County. We affirm.

Sharon raises the following issues on appeal:

1. Did the District Court err in applying a 25 percent minority discount in determining the value of Sharon's 600 shares of MRI stock?

2. Did the District Court err in refusing to award Sharon attorney fees and costs?

MRI is a Montana corporation, originally incorporated in 1965. MRI owns agricultural real estate and improvements in Roosevelt county, Montana. In 1992, Thomas McCann owned 1200 of the 2400 shares of MRI stock. In that year, Thomas and Sharon McCann divorced after a thirty-seven-year marriage. Pursuant to their Colorado divorce decree, Sharon was awarded one-half of Thomas's MRI stock.

Shortly after the McCanns' 1992 divorce, MRI, acting through its board of directors, decided to pay off two outstanding debts to Florian and Virginia McCann. The directors in turn determined that MRI would stop paying dividends to MRI shareholders as it had done in the past.

The shareholders then reincorporated MRI to make it a Montana statutory close corporation, which designation carries with it a restriction on the alienability of corporate stock. Sharon, as a shareholder of MRI, voted against the amended articles of incorporation. Sharon was not notified by MRI that she was entitled to assert dissenter's rights as required by § 35-g-103, MCA.

**MRI had** leased its land and improvements to **Robert Anderson** since 1978. The initial lease was for seven years. Before the first lease expired, MRI renewed the lease for an additional ten years. In 1993, after the filing of this lawsuit, but prior to the final disposition in District Court, MRI again renewed the Anderson lease for an additional ten years. When the lease was renewed in 1993, approximately ten months remained on the existing lease.

Following a brief and unsuccessful series of negotiations between MRI and Sharon concerning MRI's purchase of Sharon's shares, MRI instituted this lawsuit pursuant to the Montana Declaratory Judgment Act. MRI asked the District court to determine the value of Sharon's 600 shares of MRI stock and compel the sale of said stock to MRI. Sharon and MRI stipulated to allow the District Court, sitting in equity, to determine the value of Sharon's shares. Sharon agreed to transfer her shares of stock to MRI upon MRI's payment to her of the court-determined value of her stock. The stipulation read, in part:

> Subject to the parties' right to appeal the amount of the court's valuation determination and any evidentiary irregularities occurring during the conduct of the trial, the parties agree and stipulate as follows:
>
> 1. The Court may exercise its equitable powers to grant equitable relief by declaring the value of Sharon Quigley-McCann's shares and ordering the sale of the shares to occur;
>
> 2. Sharon Quigley-McCann agrees to sell and McCann Ranch agrees to purchase Sharon Quigley-McCann's 600 shares in McCann Ranch in the amount determined by the Court to be the value of the shares;
>
> 3. The Court's valuation of Sharon Quigley-McCann's shares shall be binding on the parties[.]

Following a two-day trial, the District Court determined the value of Sharon's shares to be $162,144. This valuation was established by applying a 25 percent minority discount to Sharon's interest in MRI. The court refused to grant either party attorney fees. The court did, however, add MRI's litigation expenses to the value of the corporation prior to calculating Sharon's share of the corporate assets, under the rationale that Sharon, as a quarter owner of MRI, should not be required to pay for MRI's litigation expenses.

Section 3-2-204(5), MCA, sets forth this Court's standard for reviewing equitable cases.

> In equity cases and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficient or not, and determine the same, as well as questions of law, unless for good cause a new trial or the taking of further evidence in the court below be ordered.

We have determined that

> review of findings of fact in an equitable case must comply with not only § 3-2-204(5), MCA, but also with Rule 52(a), M.R.Civ.P., which requires that findings of fact be upheld unless they are clearly erroneous.

Westfall v. Anderson (1990), 244 Mont. 113, 115, 795 P.2d 976, 977 (citing Rase v. Castle Mountain Ranch, Inc. (1981), 193 Mont. 209, 216, 631 P.2d 680, 684). A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if this Court is left with the definite and firm conviction that a mistake has been made.

4

Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

## Issue 1

Did the District Court err in applying a 25 percent minority interest discount in determining the value of Sharon's 600 shares of MRI stock?

Sharon argues that the District Court should not have applied a 25 percent discount in calculating the value of her shares. She argues that pursuant to § 35-g-501, MCA, a shareholder may petition the court for relief if the actions of a Montana statutory close corporation were illegal, oppressive, fraudulent, or unfairly prejudicial. The relief available includes the purchase of the petitioner's shares at "fair value." Section 35-9-503(2), MCA. Sharon maintains that MRI's conduct was illegal, oppressive, fraudulent and unfairly prejudicial and she is therefore entitled to "fair value" which she further maintains is the value of the stock without application of the 25 percent discount.

Sharon also contends that the court erred in applying the 25 percent discount to the value of her stock by refusing to apply the dissenter's rights provisions of Montana's codes. Section 35-9-103(2), MCA, states that when a corporation reincorporates to become a statutory close corporation, any individual voting against close corporation status may assert dissenter's rights pursuant to §§ 35-1-826 through -839, MCA. Section 35-1-827, MCA, states that when a shareholder dissents, the shareholder may obtain "fair value" of his or her shares from the corporation. Section 35-U 829(1), MCA, provides that when a shareholder will be entitled to

5

dissenter's rights, the corporation must notify the shareholder that he or she may assert dissenter's rights prior to the vote of the shareholders. MRI did not notify Sharon of her right to assert dissenter's rights. Sharon argues that the District Court sitting in equity should have afforded her "fair value" for her shares of the corporation. Again, Sharon asserts that "fair value" means the value of her shares without application of the 25 percent discount.

Sharon's arguments fail for several reasons. First, in regard to her arguments under § 35-g-501, MCA, a review of the record reveals that the corporation's actions were not illegal, oppressive, fraudulent or unfairly prejudicial. The District Court correctly noted that debts MRI paid to Florian and Virginia McCann were legally binding debts which the corporation had an obligation to pay. Paying the debts did not adversely affect Sharon's distribution from MRI because payment of the debts served to reduce the indebtedness of the corporation which otherwise would have been deducted from the total value of the corporation in determining the corporation's net value.

Nor did MRI's decision to cease paying shareholder dividends violate § 35-g-501, MCA. MRI properly accounted for all monies which would have been paid as dividends. Elimination of dividends again increased MRI's net worth, which was reflected in the value of Sharon's stock.

Renewal of the Anderson lease was clearly a business decision and not a fraudulent or oppressive act. MRI's agricultural holdings had been leased to Anderson for nearly two decades at the

time of the lease renewal. The Anderson lease did not decrease the value of MRI's holdings, but instead provided financial security for MRI's shareholders. Renewal of such a lease cannot be viewed as oppressive or fraudulent. A careful review of the record does not support these or any other contentions that MRI acted illegally, oppressively, fraudulently or with unfair prejudice toward Sharon.

Secondly, Sharon did not institute an action pursuant to § 35-9-501, MCA. This section provides that a shareholder "may petition the district court for any of the relief described in 35-9-502 through 35-9-504[.]" This action was not commenced by a petition by Sharon seeking relief as an oppressed shareholder. Rather, this action is a declaratory judgment action commenced by MRI. In the course of litigating MRI's declaratory judgment action, the parties entered into a stipulation by which the court was to determine the value of Sharon's 600 shares of MRI stock. Sharon agreed to sell and MRI agreed to purchase said shares of MRI stock at the value established by the District Court. Therefore, the subject litigation was confined to these stipulated topics, and not the relief provided in § 35-g-501, MCA, et. seq.

Sharon likewise did not assert her dissenter's rights nor did she institute proceedings to challenge MRI's failure to notify her of such dissenter's rights. Rather, Sharon stipulated to exchange her shares of MRI stock for a price established by the District Court.

7

Alternatively, Sharon has not established to the satisfaction of this Court that "fair value" necessarily excludes an application of a minority discount. Section 35-1-826(4), MCA, states:

> "Fair value," with respect to a dissenter's shares, means the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable. [Emphasis added.]

While the corporate conduct which led to the dissenter's suit should not be considered, nothing in this section prohibits considering a minority shareholder's lack of control and the lack of marketability for minority shares when establishing "fair value." Thus, the value of Sharon's 600 shares prior to the complained of conduct may still be less than one-fourth of the total assets of MRI as a whole.

We have determined that minority discounts are appropriate under certain circumstances. In approving a 25 percent minority discount, we concluded:

> A discount for a minority interest is appropriate when the minority shareholder has no ability to control salaries, dividends, profit distributions and day-to-day corporate operations.

In re Marriage of Milesnick (1988), 235 Mont. 88, 97, 765 P.2d 751, 757 (citing In re Marriage of Jorgensen (1979), 180 Mont. 294, 300, 590 P.2d 606, 610). In valuing Sharon's shares, the District Court applied the specific methodology recommended by Sharon's own expert share appraiser. The District Court correctly noted in its findings of fact:

> The stock held by defendant is insufficient to control the activities of the corporation. While

8

> **minority shareholders in a corporation must** be treated
> fairly, especially those in a closely held corporation,
> the lack of control makes such shares less valuable.
> This is a known fact, which is reasonably contemplated by
> every person who holds a minority interest in a small
> corporation.

We agree with the District Court's findings in these regards

We conclude that the District Court did not err in applying a minority discount in calculating the value of Sharon's 600 shares of MRI stock. Sharon has not established that those in control of MRI acted in an illegal, oppressive, fraudulent or unfairly prejudicial manner. She has not established any prejudice to her from the corporation's failure to notify her of her dissenter's rights, because all she was entitled to, in any event, was the "fair value" of her shares. Further, she has not established that "fair value" precludes the application of a minority discount. We hold that the court's findings of fact were not clearly erroneous.

## Issue 2

Did the District Court err in refusing to award Sharon attorney fees and costs?

Sharon argues that the court erred in refusing to award her attorney fees and costs, again basing her arguments on §§ 35-9-501 and 35-1-826 through -839, MCA. We reiterate that this is not a dissenter's right action or an oppressed shareholder petition. Regardless, the above statutory provisions vest the District Court with discretion concerning an award of attorney fees. If not otherwise specified by statute, an award of costs is left to the sound discretion of the court. Section 25-10-103, MCA

9

The record reveals that the District Court did not abuse its discretion in requiring Sharon and MRI to bear their respective costs of litigation. This action was of a declaratory nature, with both parties stipulating to the scope of the litigation. Neither party can be considered the "prevailing" party in this equitable proceeding.

Sharon also challenges the District Court's calculations of MRI's direct litigation expenses, these costs being added to the corporation's assets prior to determining the value of Sharon's 600 shares. Sharon maintains that MRI's costs and fees were $22,550, rather than the $15,846 established by the court. However, Sharon's valuation of MRI's costs and fees spent as a direct result of litigation is based on speculative trial testimony and unsupported by the record.

The District Court's findings of fact were supported by substantial evidence, the court did not misapprehend the effect of the evidence, and we are not left with the definite and firm conviction that a mistake has been committed. We hold that the court did not err in its determination concerning attorney fees and costs.

We affirm the decision of the District Court.

_____
Chief Justice

10

We concur:

William E Hunt

W. William Beaghurst
Justices