No. 05-305

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 290

ALLENE K. KARLSON,

       Plaintiff, Counterdefendant
       and Respondent,

    v.

LUDVIK ROSICH,

       Defendant, Counterclaimant
       and Appellant.


APPEAL FROM:    The District Court of the Twentieth Judicial District,
                In and For the County of Lake, Cause DV 02-182,
                Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Keith W. McCurdy, McCurdy Law Firm, P.C., Polson, Montana

       For Respondent:

              Darrel L. Moss, Sullivan, Tabaracci & Rhoades, P.C.,
              Missoula, Montana

                         Submitted on Briefs:  February 23, 2006

                               Decided:  November 8, 2006

Filed:

               _____
                           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Ludvik Rosich (Rosich) appeals from the findings of fact, conclusions of law and order entered by the Twentieth Judicial District Court, Lake County, declaring the boundary line between properties owned by Rosich and Allene K. Karlson (Karlson). We reverse and remand.

¶2     We address the following issue on appeal:

¶3     Did the District Court err in determining the boundary line between the parties' properties?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     Clyde and Myrtle Norman (Normans) owned a parcel of real property on the east lakeshore of Flathead Lake, being a part or portion of Government Lot 4, Section 16, Township 24 North, Range 19 West, Lake County, Montana. In December 1971, Clyde Norman marked off a proposed division of the property into two parcels, a northern parcel and southern parcel, for the purpose of granting the southern parcel to their daughter and son-in-law, Gladys and Ludvik Rosich.  A road surveyor, Ludvik prepared a survey of the divided lots using a third order ground survey method (i.e., transit, Dietzger, and steel tape).  However, because Ludvik was not a registered land surveyor, the survey was signed off on June 4, 1973, by Gordon Sorenson, a registered land surveyor.  The completed survey, denominated as Certificate of Survey H-2131, and a deed conveying the southern parcel to Gladys and Ludvik was recorded on November 9,

2

1973. The northern parcel was retained by the Normans, who transferred the parcel to other family members. The parcel was ultimately transferred to Karlson.

¶5 Rosich remains the owner of the southern parcel. A dispute arose between Karlson and Rosich regarding the location of the common property line between their respective properties, and, as a result, Karlson filed an action requesting the District Court to declare and adjudicate the correct and proper location of the boundary line between the two tracts of land pursuant to the Montana Uniform Declaratory Judgments Act, § 27-8-101, et seq., MCA. Karlson asserted that the boundary line was properly identified by the survey prepared by surveyor Jane Eby (Eby survey). Rosich denied that the Eby survey correctly identified the dividing line and filed a counterclaim asserting the boundary line was properly shown on the survey prepared by surveyor Greg Marengo (Marengo survey).

¶6 The case was tried before the District Court without a jury. On February 1, 2005, the court entered judgment in favor of Karlson. The court found that the property had been divided pursuant to a family transfer exemption under the Subdivision and Platting Act, and declared the true and correct property line was as depicted by the Eby survey. Rosich filed a motion to amend and supplement the court's findings of fact and conclusions of law and to alter or amend the order, which Karlson opposed and the District Court denied. Rosich appeals.

**STANDARD OF REVIEW**

¶7 "Declaratory relief is an equitable remedy." *Oregon ex rel. Dept. of Transp. v. Heavy Vehicle*, 198 F.Supp.2d 1202, 1206 (D. Or. 2002). "Section 3-2-204(5), MCA, in

3

combination with Rule 52(a), M.R.Civ.P., control this Court's standard for reviewing equitable cases and require that findings of fact be upheld unless they are clearly erroneous." *Hansen v. 75 Ranch Co*., 1998 MT 77, ¶ 20, 288 Mont. 310, ¶ 20, 957 P.2d 32, ¶ 20 (citing *McCann Ranch, Inc. v. Quigley-McCann,* 276 Mont. 205, 208, 915 P.2d 239, 241 (1996)). "Our standard of review pertaining to a district court's conclusions of law, in rendering a declaratory judgment, is to determine if the court's interpretation of the law is correct." *Skinner v. Allstate Ins. Co*., 2005 MT 323, ¶ 10, 329 Mont. 511, ¶ 10, 127 P.3d 359, ¶ 10 (quoting *City of Great Falls v. DPHHS,* 2002 MT 108, ¶ 10, 309 Mont. 467, ¶ 10, 47 P.3d 836, ¶ 10).

## DISCUSSION

¶8      *Did the District Court err in determining the boundary line between the parties' properties?*

¶9      In order to determine the proper surveying standards to be applied to the disputed boundary line, the District Court first considered whether this division of property qualified as an exemption under the Montana Subdivision and Platting Act (Act). We note that, in undertaking this issue, it appears[1] the District Court applied the 2003 version of the Act. Although we ultimately determine herein that the 2003 version of the Act is not applicable to this division, we nonetheless initially undertake consideration of the District Court's analysis under the 2003 statutes, in order to address other pertinent issues raised in its order and to provide guidance upon remand.

---

[1]The version of the statute applied by the District Court is not expressly identified in its order.

4

¶10    If the property division here was not exempted and, therefore, subject to the Act's review and regulation, then the survey standards to be applied would be those provided by § 76-3-402, MCA (2003), entitled "Survey and platting requirements for subdivided lands."[2]  On the other hand, if the property division qualified as an exemption under the Act, then the survey would be governed by § 76-3-401, MCA (2003), entitled "Survey requirements for lands other than subdivisions."

¶11    In addressing the exemption issue, the District Court concluded the Normans' division of the property was "for the benefit of their children" and, therefore, was "a division of land not considered a subdivision under § 76-3-207(1)(a), MCA."  However, this statute provides that "divisions made outside of platted subdivisions for the purpose of relocating common boundary lines between adjoining properties" are "not subdivisions under this chapter."  The problem here is apparent:  although the District Court concluded that the division qualified for a family exemption, it nonetheless cited the provision governing a common boundary exemption.  This division could not have qualified as a common boundary relocation, because the land divided was wholly owned by the Normans—there was no common boundary line between multiple owners at the time of the division that could have been relocated.  Thus, the exemption provided under § 76-3-207(1)(a), MCA (2003), could not have been applicable.

---

[2]Those requirements include that "retracement of lines must conform to United States bureau of land management instructions, and all public land survey corners must be filed in accordance with Corner Recordation Act of Montana . . . ."  Section 76-3-402(3), MCA (2003).

¶12 The District Court may have intended to refer to § 76-3-207(1)(b), MCA (2003), which provides an exemption from subdivision review for divisions made "for the purpose of a single gift or sale in each county to each member of the landowner's immediate family." This supposition arises from the District Court's finding that the Normans' division was for the benefit of their children.

¶13 However, even if this Court's conjecture is correct, and the District Court intended to rely on § 76-3-207(1)(b), MCA (2003), in concluding that the division was exempted under the Act by virtue of a family transfer, the court's order was unclear about the surveying criteria it was applying to the division. The District Court concluded that "this is not a subdivision under § 76-3-207(1)(a) M.C.A., so § 76-3-402 M.C.A., does not apply," but nonetheless found that the Eby survey, which it ruled was the correct survey, "utilized, conformed to, and adhered to the U.S. Bureau of Land Management instructions"—the criteria required by § 76-3-402, MCA (2003).

¶14 Though we raise the above-referenced concerns to assist in analyzing the matter upon remand, the greater question is which version of the Act is applicable herein. Obviously, before questions about the Act, its exemptions, and the proper survey criteria can be taken up, the applicable version of the Act must be determined. The issue here involves an element of time, that is, the intention when the property was originally divided. "The object of all rules for the establishment of boundaries is to ascertain the actual location of the boundary as made *at the time*." *Rogers Bros. Coal Co. v. Roberts*, 287 S.W. 725, 726 (Ky. App. 1926) (emphasis added). "As to boundary disputes, the primary purpose is to track the footsteps of the original surveyor, to locate

6

the survey as it was intended to be located on the ground by him." *State v. Pennsylvania Railroad Company*, 228 A.2d 587, 595 (Del. Super. 1967) (citing *Moore v. Campbell*, 254 S.W.2d 1018, 1024 (Tex. Civ. App. 1953)).

¶15    Thus, the law governing survey criteria at the time of the transaction must be applied.  "[Courts] have long held that parties to a conveyance have a right to rely upon the law as it was at that time."  *Ark. Presbytery of Cumberland v. Hudson*, 40 S.W.3d 301, 310 (Ark. 2001), *cert denied*, 534 U.S. 945, 122 S. Ct. 329 (2001); *see generally* 23 Am. Jur. 2d *Deeds* § 9 (2002) (a court evaluates a conveyance "[f]rom the standpoint of time, the law in effect at the time of the execution of a deed governs its validity and interpretation").  The Supreme Court of Missouri has held that "[i]n determining the meaning of the provisions of the deed, we 'must be governed by the law in force at the time it was made.'"  *Leeper v. Leeper,* 147 S.W.2d 660, 662 (Mo. 1941) (quoting *Frame v. Humphreys*, 64 S.W. 116, 119 (Mo. 1901)).  Similarly, the Supreme Court of Nebraska has held that "the general rule is that: '[f]rom the standpoint of time the law in effect at the time of the execution of a deed governs its validity and interpretation.'" *Dell v. City of Lincoln*, 102 N.W.2d 62, 68 (Neb. 1960) (citation omitted).  We have stated, about contracts generally, that "[t]he laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." *City of Philipsburg v. Porter*, 121 Mont. 188, 193, 190 P.2d 676, 678 (1948) (citations omitted).  Section 70-1-513, MCA, provides that "[g]rants are to be interpreted in like manner with contracts . . . ."

7

¶16    The District Court found that the deed and survey exhibit dividing the Normans' property were "filed for record in the office of the Lake County Clerk and Recorder on November 9, 1973." As such, the District Court should have looked to the law in effect at that time, not in 2003. We note that the transfer here was recorded after the enactment of the 1973 Montana Subdivision and Platting Act, which was effective October 1, 1973, and made applicable to "all division of real property made after June 30, 1973, into lots, tracts, or parcels any of which is ten (10) acres or less in size." Laws of Montana (1973), ch. 500, § 4. Thus, questions regarding exemptions and survey criteria under the Act must be resolved pursuant to the status of the Act at that time.[3]

¶17    We conclude the District Court's order is flawed because of internal inconsistencies and the application of the wrong version of the Act. Accordingly, we remand the case to the District Court for further proceedings. It is up to the District Court to determine whether the additional taking of evidence and/or factfinding is necessary in order to determine the proper survey criteria and resolve the boundary issue in accordance with this opinion.

¶18    Reversed and remanded.


                                    /S/ JIM RICE


---

[3]Of course, the Act changed considerably between 1973 and 2003. The 1973 version did contain, however, an exemption for family transfers. Laws of Montana (1973), ch. 500, § 4.

We concur:


/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON