FILED

April 1 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 08-0342

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 109N

ALLENE KARLSON,

        Plaintiff and Appellant,

  v.

LUDVIK ROSICH,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 2002-182
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Darrel L. Moss, Sullivan, Tabaracci & Rhoades, P.C., Missoula, Montana

        For Appellee:

        Keith W. McCurdy, McCurdy Law Firm, Polson, Montana

Submitted on Briefs:  March 4, 2009

Decided:  March 31, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Allene Karlson (Karlson) and Ludvik Rosich (Rosich) own neighboring properties in Lake County. Both of these properties are depicted on Certificate of Survey H-2131 (CoS H-2131) as recorded in Lake County in 1973. Karlson's parcel of land is directly north of Rosich's, and the properties share a common boundary. At some point, a dispute arose concerning the exact location of the property line between the two parcels.

¶3 Karlson subsequently had the property line professionally surveyed by Eby & Associates, P.C. Eby & Associates also prepared a new Certificate of Survey for the properties, designated as CoS 5748RT. On November 25, 2002, Karlson filed a declaratory judgment action against Rosich, seeking a declaration that the Eby survey accurately set forth the exact location of the property line. The matter proceeded through the adjudicatory process culminating in a bench trial before Judge Christopher. On February 1, 2005, Judge Christopher issued an order declaring that the boundary line between the properties was best described by the new CoS 5748RT as prepared by Eby & Associates in accordance with its survey of the property line.

¶4     Rosich appealed Judge Christopher's decision to this Court. On November 8, 2006, we issued our Opinion in *Karlson v. Rosich*, 2006 MT 290, 334 Mont. 370, 147 P.3d 196. We reversed and concluded that the District Court's order was "flawed because of internal inconsistencies and the application of the wrong version of the [Montana Subdivision and Platting] Act." *Karlson*, ¶ 17. We further stated that:

> Accordingly, we remand the case to the District Court for further proceedings. It is up to the District Court to determine whether the additional taking of evidence and/or factfinding is necessary in order to determine the proper survey criteria and resolve the boundary issue in accordance with this opinion.

*Karlson*, ¶ 17.

¶5     Upon remand, the District Court engaged in additional fact-finding, receiving evidence from both parties on the proper location of the disputed property line, and issued a written order dated July 5, 2007. The District Court determined that the Karlson and Rosich parcels had originally been held in one larger parcel owned by Clyde and Myrtle Norman (Normans). The Normans subdivided their parcel with the intention of creating two equal parcels, one of which went to members of the Rosich family, the other to be reserved for themselves. Karlson later came to own the parcel formerly held by the Normans. The District Court reviewed the survey history of the Rosich and Karlson parcels, and reviewed in detail CoS H-2131. The District Court concluded that some of the monuments identified in CoS H-2131 were no longer accurate, and that the angles and distances depicted on this survey were not reliable, as they had originally been generated by a non-licensed surveyor using defective instruments. Of the eight monuments identifiable on CoS H-2131, the District Court found that three of them were

3

in dispute and that their location was central to fixing the proper location of the property line.

¶6     Accordingly, the District Court ordered the parties to retain a registered land surveyor to conduct a new survey of the disputed property. Based on its analysis of the survey history of the properties, the District Court directed this surveyor to comply with two specific conditions. First, the surveyor was required to place permanent markers for two monuments, labeled as Nos. 4 and 5, in accordance with instructions set forth in the District Court's order. Second, the surveyor was to apply standards and methods appropriate for a division of land which would have governed in 1973, since that was the year the Normans subdivided the land.

¶7     The parties eventually agreed that Dick Smith (Smith) of Smith Surveying and Consulting, would conduct the survey. On May 7, 2008, Smith presented his report and survey to the District Court. On May 12, 2008, the District Court issued an order giving both parties an opportunity to file objections to the Smith survey. The District Court stated that if no objections were filed, it would adopt the Smith survey and issue a declaratory judgment to that effect. The District Court also ordered Karlson to submit a proposed judgment.

¶8     Rosich submitted a response on May 30, 2008. While Rosich did not totally agree with Smith's placement of some of the monuments, he did not object to the survey recognizing that "[t]his case has to come to an end."

¶9     On June 2, 2008, Karlson submitted her objection to the survey, raising objections on two grounds. First, she asserted that the Smith survey did not comply with the District

4

Court's order because it rejected and ignored some of the monuments specifically determined by the District Court in its previous order. Second, Karlson argued that the survey was not in accordance with applicable law. In support of her objections, Karlson submitted an unsworn, 14-page analysis and critique of the Smith report and survey, which had been prepared by Eby & Associates. Karlson did not request a hearing in order to present her objections to the District Court.

¶10 Rosich responded to Karlson's objections, arguing that Eby & Associates' analysis and critique of the Smith report and survey was simply an "attempt to retry the case through unsworn testimony, supposition, and innuendo." Further, Rosich pointed out that Smith had been agreed upon by both parties, and asserted that he conducted an independent survey of the disputed boundary line which should be accepted by the District Court.

¶11 On June 25, 2008, the District Court issued an order accepting the Smith survey, and declaring that the true and correct property line was depicted on the proposed certificate of survey prepared by Smith.

¶12 Karlson now appeals the District Court's decision. Karlson argues the District Court committed reversible error by adopting the Smith survey because the survey failed to set the monuments as specifically identified by the District Court in its July 5, 2007 order, and failed to adhere to generally accepted surveying standards. Karlson argues, based on the Eby & Associates' critique of the Smith survey, that Smith rejected and moved the location of several monuments which had already been fixed by the District Court. Karlson also argues that Smith relied on some monuments which the District

5

Court, in its analysis of the survey history of the disputed property line, had already determined to be unreliable and erroneous.

¶13    Additionally, Karlson asserts the District Court's order should be reversed because she was denied due process when the District Court adopted the Smith report and survey without a hearing and without its own factual findings and conclusions of law to determine the accuracy, completeness, or competency of the Smith survey.  Karlson asserts that by adopting the Smith survey, the District Court essentially accepted out-of-court statements, speculation, assumption, and surveys and exhibits not in evidence.  Accordingly, Karlson argues the District Court's decision must be reversed.

¶14    Rosich urges us to affirm.  First, he argues that our decision in *Rosich* is the law of the case and must be adhered to in all subsequent proceedings.  Rosich argues that in *Rosich* we said the District Court could engage in any additional fact-finding it deemed necessary, and gave it the latitude to take additional testimony and evidence in order to settle the property line dispute.  Rosich argues the District Court acted in accordance with the *Rosich* decision, and that Karlson is simply attempting to collaterally attack that decision in her present appeal.  Additionally, Rosich argues that the Smith survey is not in conflict with the District Court's July 5, 2007 order, and that the Eby & Associates' critique of the survey is simply not well-founded.

¶15    We review a district court's conclusions of law in a declaratory action for correctness.  *Rosich*, ¶ 7.  We review its factual findings under the clearly erroneous standard.  *Rosich*, ¶ 7.  To determine whether a finding of fact is clearly erroneous, we consider whether that finding is supported by substantial evidence, whether the district

court misapprehended the effect of the evidence, or whether our review of the record leaves us with a definite and firm conviction that a mistake has been made. *State v. Bieber*, 2007 MT 262, ¶ 20, 339 Mont. 309, 170 P.3d 444.

¶16 Karlson has failed to demonstrate that the District Court's findings of fact are clearly erroneous or that its conclusions of law are incorrect. Karlson's critique of the Smith survey and the District Court's adoption thereof, are all based upon the unsworn analysis by Eby & Associates submitted in conjunction with her objections. While Eby & Associates clearly disagrees with the Smith survey, Karlson has not specifically demonstrated how this disagreement shows that the Smith survey, and its adoption by the District Court, also entails the adoption of clearly erroneous findings of fact or incorrect legal conclusions.

¶17 Moreover, we agree with Rosich that our decision *Rosich* was the law of this case, and empowered the District Court to take any additional evidence, or engage in any additional fact-finding, necessary to settle the property line dispute. Even if the Smith survey deviated from the District Court's previous order dated July 5, 2007, the District Court was free to accept or reject Smith's survey under *Rosich*. If Karlson wished to make the Eby & Associates critique of the Smith survey part of the record, and then specifically refer to the relevant portions of that critique when making its objections, it was certainly free to do so. However, it merely attached the unsworn Eby & Associates critique to its objections without any further commentary or analysis.

¶18 Finally, we note that although Karlson complains that she did not get a hearing on her objections, it is clear from the record that she never in fact requested one. Thus, her

claims of denial of due process resulting from the District Court's failure to hold a hearing she never requested ring hollow.

¶19 We have determined to decide this case pursuant to Section 1, Paragraph 3(d)(v) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the record before us that the District Court did not err in adopting the Smith survey and accepting the property line indicated in the proposed certificate of survey prepared by Smith. Therefore, we affirm.

/S/ PATRICIA COTTER

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE