DA 12-0140

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 276

ROSLYN SHEPHARD, PERSONAL REPRESENTATIVE
OF THE ESTATE OF PAUL F. WIDHALM; and ROSLYN
SHEPHARD, PERSONAL REPRESENTATIVE OF THE
ESTATE OF EVONNE WIDHALM,

      Plaintiff, Appellant, and Cross-Appellee,

  v.

ROBERT WIDHALM and DIANNA WIDHALM,

      Defendants, Appellees, and Cross-Appellants.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DV 09-52
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Richard F. Gallagher; Church, Harris, Johnson & Williams, P.C., Great Falls,
Montana

      For Appellees:

            Kirk D. Evenson and Sara Sexe; Marra, Sexe, Evenson & Bell, P.C., Great
Falls, Montana

Submitted on Briefs:  September 19, 2012
Decided:  December 4, 2012

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Roslyn Shephard ("Shephard") appeals an order from the Ninth Judicial District, Pondera County, as Personal Representative of the estates of Paul Widhalm ("Paul") and Evonne Widhalm ("Evonne").    Robert Widhalm ("Robert") and Dianna Widhalm (collectively, "the Widhalms") cross-appeal.  We affirm.

¶2    The following issues are presented for our review:

¶3    *Issue One:  Whether the District Court correctly determined that the lease executed on May 11, 2009, was valid without Shephard's signature as the Personal Representative of Paul's estate.*

¶4    *Issue Two:  Whether substantial evidence supports the District Court's finding that the Widhalms had not sublet the farm in violation of the lease.*

¶5    *Issue Three:  Whether the District Court correctly determined that the terms of the lease entitled the Widhalms to notice of their alleged breach and an opportunity to cure.*

¶6    *Issue Four:  Whether the District Court abused its discretion by awarding attorney fees to the Widhalms on an hourly basis.*

¶7    *Issue Five:  Whether the District Court correctly determined that the Widhalms had not proven that they suffered damages other than lost crop inputs by a preponderance of the evidence.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶8    Paul and Evonne owned a farm in Pondera County as tenants in common worth $1,652,850.  Paul and Evonne each executed a will that left their property first to each other and then to their eight children.  Paul and Evonne leased the farm to their eldest child,

Robert, and his wife, Dianna, in 1998. Robert had helped Paul farm the land for most of his adult life.

¶9 The term of the first lease ran from January 1, 1999, through December 31, 2003. The lease included an option to re-lease the property for an additional five years, an option to purchase the property for $400,000, and a prohibition against subletting the farm without prior written permission from Paul and Evonne.

¶10 The Widhalms exercised their option to re-lease the land at the end of the first lease. The parties executed a second lease on December 31, 2003. This second lease ran through the end of 2008. The second lease mirrored the first lease in all respects other than the lease term. The second lease included the same option to re-lease, the same option to purchase, and the same prohibition against subletting.

¶11 Paul died on September 19, 2008. Evonne renounced her right to be Personal Representative of Paul's estate due to health concerns of her own. Roslyn Shephard, Robert's sister, was appointed Personal Representative by operation of Paul's will.

¶12 The Widhalms notified Evonne a little over a month after Paul's death that they intended to re-lease the farm for another five-year period starting on January 1, 2009. The parties failed to execute the third lease, however, until May 11, 2009. Robert delayed asking his mother to sign the third lease to avoid troubling her with business while she was grieving about Paul's death. The third lease included the same option to re-lease, the same option to purchase, and the same prohibition against subletting. Evonne signed the third lease as the sole owner and lessor of the property.

3

¶13    The Widhalms enlisted the help of their neighbor Kenneth Wheeler ("Wheeler") in May of 2009, to seed their crop. Robert went to the local Agricultural Stabilization and Conservation Service ("ASCS") office after the crop had been planted. There he attempted to reconstitute the farm to list Wheeler as the operator of the Widhalm farm. Robert's attempt to reconstitute the farm would have entitled Wheeler to receive government subsidies for the property. The reconstitution did not take effect, however, because Shephard had not signed the documents as Personal Representative of her parents' estates.

¶14    Evonne died on June 10, 2009. Shephard also was appointed Personal Representative of Evonne's estate. Shephard terminated the Widhalms' lease on July 22, 2009, without prior notice, effective immediately. Shephard claimed that the Widhalms incurably had breached the terms of the lease by subletting the farm to Wheeler without prior written permission.

¶15    Robert testified that he had tried to reconstitute the farm to ensure that Wheeler would get paid for helping him seed the land. Shephard interpreted Robert's efforts to mean that the Widhalms had sublet the farm to Wheeler. Shephard leased the farm to Wheeler, herself, on July 29, 2009, one week after Shephard had terminated the Widhalms' lease. The Widhalms notified Shephard the next day that they intended to exercise their option under the lease to purchase the farm for $400,000.

¶16    Shephard sued the Widhalms on August 19, 2009, in her capacity as Personal Representative of Paul's and Evonne's estates. Among other things, Shephard sought to invalidate the Widhalms' third lease due to the fact that she had not signed it on Paul's behalf. Shephard alternatively sought an order declaring that the Widhalms had breached the

4

terms of the lease. The Widhalms counterclaimed. The Widhalms alleged that Shephard had breached the terms of the lease by wrongfully terminating the lease and by failing to provide notice to the Widhalms of the alleged breach. The Widhalms sought specific performance of the lease and they sought separate monetary damages.

¶17 The District Court conducted a four-day bench trial. The court first upheld the validity of the third lease even though Shephard had not signed it. The court next determined that Shephard wrongfully had terminated the lease. Evonne owned Paul's half interest in the farm immediately upon his death and therefore Evonne had the authority to lease the entire farm to the Widhalms. The court also found that the Widhalms had not sublet the property to Wheeler. The court determined, in the alternative, that Shephard's termination of the lease would have been wrongful even if the Widhalms had sublet the property due to Shephard's failure to notify the Widhalms of the alleged breach and provide the Widhalms an opportunity to cure the breach as required by the terms of the lease.

¶18 The District Court granted the Widhalms specific performance of the third lease. The court's order for specific performance gave the Widhalms the right to lease the property under the terms of the third lease for the remainder of the lease term, or the right to exercise their option to purchase the property under the terms of the third lease. The court further awarded damages for the cost of their 2009 crop inputs. The court also awarded attorney fees and costs to the Widhalms pursuant to a fee-shifting provision in the lease and pursuant to the Uniform Declaratory Judgments Act, §§ 27-8-101 et seq., MCA. The court declined, however, to award the Widhalms damages for lost farm income, auction expenses, lost

5

equipment, taxes that they had incurred from selling property, and costs to replace their cattle.

¶19 The Widhalms submitted an affidavit of attorney fees and costs on June 16, 2011, in which they claimed that they had incurred attorney fees of $585,966.30 and $12,887.62 in costs. The court held a hearing on attorney fees on August 8, 2011. Robert testified that he and his counsel had agreed to a contingent fee arrangement. One of the Widhalms' counsel testified that they had used the court's award of $13,324 for damages and interest, plus the difference between the $1,652,850 fair market value of the farm and the lease's $400,000 purchase price in the Widhalms' option, to calculate attorney fees. Widhalms' counsel's forty-percent share of this $1.2 million plus interest brought the total fee claim to $585,966.30. The court rejected this amount as unreasonable. The court instead awarded attorney fees on an hourly basis in the amount of $98,431.

¶20 Shephard appeals the court's decision to uphold the third lease, the court's finding that the Widhalms had not sublet the farm, and the court's determination that Shephard was required to notify the Widhalms of their breach and to offer a chance to cure the breach. The Widhalms cross-appeal the court's failure to award the full amount of attorney fees that they sought and the court's findings that they had not proven damages other than lost crop inputs by a preponderance of the evidence.

## STANDARD OF REVIEW

¶21 We review for clear error a district court's findings of fact. *Karlson v. Rosich*, 2006 MT 290, ¶ 7, 334 Mont. 370, 147 P.3d 196. We review for correctness a court's conclusions

of law. *Karlson*, ¶ 7. A finding is clearly erroneous if not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if we have a definite and firm conviction that the district court made a mistake. *Renner v. Nemitz*, 2001 MT 202, ¶ 12, 306 Mont. 292, 33 P.3d 255. We review for an abuse of discretion a district court's award of attorney fees. *Gullett v. Van Dyke Const. Co.*, 2005 MT 105, ¶ 12, 327 Mont. 30, 111 P.3d 220.

## DISCUSSION

¶22 *Issue One: Whether the District Court correctly determined that the lease executed on May 11, 2009, was valid without Shephard's signature as the Personal Representative of Paul's estate.*

¶23 Shephard contends that Evonne lacked authority to lease the real property on her own. Shephard cites the fact that probate had been opened on Paul's estate before Evonne had signed the third lease. Shephard further argues that Paul's one-half interest in the real property had not yet been deeded to Evonne. Shephard acknowledges that real property in Montana devolves to a devisee immediately upon the testator's death. Section 72-3-101(2), MCA. She argues, however, that § 72-3-606, MCA, provides an exception to that general rule.

¶24 Section 72-3-606(1), MCA, grants a personal representative the authority to take possession or control of devised property when "necessary for purposes of administration." This limited right derives from the common law and predates its codification as part of the Uniform Probate Code in 1974. See *Rumney v. Skinner*, 64 Mont. 75, 208 P. 895 (1922) (describing a personal representative's limited authority to possess estate assets solely for

7

purposes of paying the decedent's debts); *In re Est. of Deschamps*, 65 Mont. 207, 212 P. 512 (1922); *In re Armesworthey's Est.*, 117 Mont. 602, 160 P.2d 472 (1945) (recognizing a personal representative's limited right to control estate property to pay debts of the decedent, the expenses of administration, or the family allowance). Shephard submits that she had taken control of the property for purposes of administering the estate by paying Paul's bills on his behalf before he died. She further argues that she had taken control of the property by informing the Widhalms that she was unhappy with their performance under the lease. Shephard argues that her exercise of control of Paul's half interest in the property under § 72-3-606, MCA, invalidates Evonne's signature on the lease.

¶25 This Court long has held that a personal representative possesses only a qualified right to control property for purposes of administration. *Rumney*, 64 Mont. at 82, 208 P. at 897. The statute authorizes the personal representative to assert the right to control property only when it is necessary for purposes of administration of the estate. Section 72-3-606, MCA. These necessary purposes include the need to pay creditors' claims, administration expenses, or a family allowance. *In re Armesworthey's Est.*, 117 Mont. at 609, 160 P.2d at 475; *In re Est. of Deschamps*, 65 Mont. at 213, 212 P. at 513; *Rumney*, 64 Mont. at 82, 208 P. at 897.

¶26 A devisee's title to the property does not depend upon receiving a deed or decree of distribution. Rather, as § 72-3-101(2) indicates, title to the property vests in the devisee at the moment of the testator's death. *In re Armesworthey's Est.*, 117 Mont. at 609, 160 P.2d at 475; *In re Est. of Deschamps*, 65 Mont. at 212, 212 P. at 513. A deed of distribution merely confirms that which already has taken place and releases the property from any conditions to

8

which it was subject during probate. *In re Armesworthey's Est.*, 117 Mont. at 609, 160 P.2d at 475; *In re Est. of Deschamps*, 65 Mont. at 213, 212 P. at 513.

¶27 Evonne's title to Paul's half interest in the real property vested immediately when he died. Evonne's right to use the property as she saw fit, including the right to continue to lease the farm to the Widhalms, was not impeded because she had not received a deed of distribution. Nothing in the record suggests that it was necessary for Shephard to take control of the property for purposes of administering Paul's estate. Shephard reasonably may have thought that the Widhalms were not properly performing under the lease. Shephard could not address that concern under § 72-3-606, MCA, however, in her capacity as the Personal Representative of Paul's estate.

¶28 Shephard further justifies her alleged control of the property for purposes of administration based on her belief that the Widhalms had withheld rent that they owed Paul and Evonne in the years preceding their deaths. Shephard claims that § 72-3-606, MCA, authorized her to take control of the property to assert claims against the Widhalms on Paul's and Evonne's behalf. Shephard's allegations regarding nonpayment of rent have no bearing, however, on whether the third lease was valid. These asserted claims do not change the fact that Evonne was the sole owner of the property upon Paul's death. Evonne subsequently executed a valid lease with the Widhalms as sole owner of the property.

¶29 *Issue Two: Whether substantial evidence supports the District Court's finding that the Widhalms had not sublet the farm in violation of the lease.*

¶30 Shephard argues that conflicting evidence presented at trial undermines the District Court's finding that the Widhalms had not sublet the farm to Wheeler. Shephard points first

9

to Robert's attempt to reconstitute the farm at the ASCS office. Shephard next argues that Wheeler testified on direct examination that he thought that Robert's efforts to reconstitute the farm meant that he was taking over the Widhalms' lease. More importantly, Shephard argues that regardless of what the Widhalms and Wheeler intended, the terms of the lease prohibited the Widhalms' agreement with Wheeler.

¶31 The District Court specifically considered Robert's efforts to reconstitute the farm with the ASCS when it found that he had not sublet the farm to Wheeler. Shephard ignores Wheeler's testimony that he never sublet the farm from Robert when directly asked if he had done so. Robert also testified that he had not sublet the farm to Wheeler. Robert explained that he had tried to reconstitute the farm to ensure that Wheeler got paid for helping seed his crops. We will not disturb on appeal the factfinder's determination of witness credibility. *State v. Thorp*, 2010 MT 92, ¶ 24, 356 Mont. 150, 231 P.3d 1096. Likewise, we will not disturb the weight that the factfinder has assigned to the testimony of each witness. *Thorp*, ¶ 24. Substantial evidence supports the District Court's finding that the Widhalms had not sublet the farm to Wheeler.

¶32 *Issue Three: Whether the District Court correctly determined that the terms of the lease entitled the Widhalms to notice of their alleged breach and an opportunity to cure.*

¶33 Shephard next contends that the Widhalms' inability to cure the breach excused her from providing the Widhalms notice of their breach and an opportunity to cure as required by the lease. Shephard premises this argument on a purported finding that the Widhalms had breached the lease. The District Court specifically found, in fact, that the Widhalms had not breached the lease through their dealing with Wheeler. Substantial evidence in the record

10

supports this finding and also renders moot Shephard's claim that she had no duty to provide notice to the Widhalms of their alleged breach and an opportunity to cure the breach.

¶34 *Issue Four: Whether the District Court abused its discretion by awarding attorney fees to the Widhalms on an hourly basis.*

¶35 The Widhalms argue that the District Court abused its discretion when it rejected as unreasonable the full $585,966.30 in attorney fees that they had requested. The amount of an award for attorney fees falls within the discretion of the District Court. *Glaspey v. Workman*, 234 Mont. 374, 377, 763 P.2d 666, 668 (1988). A court must base an award of attorney fees on the unique circumstances of the case and competent evidence. *Morning Star Enters. v. R.H. Grover, Inc.*, 247 Mont. 105, 114, 805 P.2d 553, 558 (1991). We will disturb a district court's attorney fees award only if it acted arbitrarily without conscientious judgment or exceeded the bounds of reason when it set the award. *Glaspey*, 234 Mont. at 377, 763 P.2d at 668.

¶36 The court assessed the reasonableness of the attorney fees claim based on the factors set forth most recently in *Plath v. Schonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, 64 P.3d 984. The court focused on the character and importance of the litigation. The court characterized the litigation as having revolved around the validity of the lease since its inception. The case presented no novel or complex legal issues. The litigation established no new precedent. Most importantly, the court noted that the Widhalms had failed to present any evidence that an attorney fees award of $585,966.30 was reasonable and customary for this straight-forward type of claim that had been resolved through a four-day bench trial.

11

¶37 The court implicitly declined to reduce the value assigned to the award for specific performance of the lease so that it could apply the contingent fee agreement to arrive at a more reasonable amount. The court balked at applying the contingent fee agreement because the agreement failed to indicate how to value an order for specific performance of the lease. The Widhalms' counsel refused to submit a copy of the full contingent fee agreement to the court. The Widhalms' counsel testified, however, that the contingent fee agreement did not specify how to value an award for specific performance of the lease.

¶38 The court instead multiplied the number of hours that the Widhalms' counsel had worked on the case by the $200 hourly rate that they usually charge their clients. The court's calculations resulted in an attorney fees award of $98,431. The court incorporated its previous analysis of the reasonableness factors. The court deemed this amount reasonable based on the nature of the case and the fact that the award related directly to the time and labor required by counsel. The court's careful consideration of the nature and complexity of the litigation and its decision to base the award on the amount of time that the Widhalms' counsel actually had worked on the case persuades us that it did not abuse its discretion.

¶39 *Issue Five: Whether the District Court correctly determined that the Widhalms had not proven that they suffered damages other than lost crop inputs by a preponderance of the evidence.*

¶40 Lastly, the Widhalms argue on their cross-appeal that the District Court ignored evidence when it refused to award them compensatory damages other than for lost crop inputs. The Widhalms claim specifically that the court overlooked evidence regarding damages for lost farm income and various losses that they incurred from selling different

assets. The District Court made findings, however, that the Widhalms had not proven those damages by a preponderance of the evidence. The court determined that the Widhalms had not presented sufficient evidence regarding replacement values, relevant offsets, the effect of drought and adverse weather conditions, and the effect of the Widhalms' precarious financial situation. The court concluded that an award for the denied damages would have been speculative based on the evidence presented at trial.

¶41 The court's findings make it clear that it considered all of the evidence before it determined that the Widhalms had not satisfied their burden of proving the claimed damages. We decline to second guess on appeal the District Court's assessment of the weight to be afforded to evidence presented at trial. *Hallenberg v. Gen. Mills Operations, Inc.*, 2006 MT 191, ¶ 33, 333 Mont. 143, 141 P.3d 1216.


¶42 Affirmed.

/S/ BRIAN MORRIS


We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

13